# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF VIRGINIA
### (Roanoke Division)

|  |  |
|---|---|
| **KRAEEMA JOHNSON**, on behalf of herself and others similarly situated, | ) ) ) |
| -AND- | ) ) |
| **KETITIA STANLEY**, on behalf of herself and others similarly situated, | ) ) ) |
| *Plaintiffs*, | ) ) ) |
| v. | ) ) |
| **OLD SOUTHWEST HEALTH AND REHABILITATION, LLC,** | ) ) ) |
| <u>SERVE</u>: R/A: Vcorp Agent Services, Inc.<br>4701 Cox Rd Ste 285<br>Glen Allen, VA, 23060 – 6808 | ) ) ) ) |
| -AND- | ) ) |
| **SEVEN HILLS REHABILITATION AND NURSING LLC,** | ) ) ) |
| <u>SERVE</u>: R/A: Vcorp Agent Services, Inc.<br>4701 Cox Rd Ste 285<br>Glen Allen, VA, 23060 – 6808 | ) ) ) ) |
| -AND- | ) ) |
| **ROANOKE REHAB & HEALTHCARE CENTER LLC,**<br>**d/b/a/ Star City Rehabilitation and Nursing,** | ) ) ) ) |
| <u>SERVE</u>: R/A: Capitol Corporate Services, Inc.<br>10 S. Jefferson St., Suite 1800<br>Roanoke, VA 24011-1323 | ) ) ) ) |
| -AND- | ) ) ) |

CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
August 27, 2024
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

**Civil Case No.:** 7:24cv00574

**COLLECTIVE CERTIFICATION REQUESTED**

**CLASS CERTIFICATION REQUESTED**

**JURY TRIAL DEMANDED**

**RIVER EDGE REHABILITATION AND**   )
**NURSING LLC,**   )
   )
<u>**SERVE**</u>: R/A: Vcorp Agent Services, Inc.   )
      4701 Cox Rd Ste 285   )
      Glen Allen, VA, 23060 – 6808   )
   )
-AND-   )
   )
**WYTHE VA OPCO LLC,**   )
**d/b/a Mountain Laurel Rehabilitation**   )
**and Nursing**,   )
   )
<u>**SERVE**</u>: R/A: Vcorp Agent Services, Inc.   )
      4701 Cox Rd Ste 285   )
      Glen Allen, VA, 23060 – 6808   )
   )
-AND-   )
   )
**GREENE ACRES REHABILITATION**   )
**AND NURSING LLC,**   )
   )
<u>**SERVE**</u>: R/A: Vcorp Agent Services, Inc.   )
      4701 Cox Rd Ste 285   )
      Glen Allen, VA, 23060 – 6808   )
   )
-AND-   )
   )
**DEER MEADOWS REHABILITATION**   )
**AND NURSING LLC,**   )
   )
<u>**SERVE**</u>: R/A: Vcorp Agent Services, Inc.   )
      4701 Cox Rd Ste 285   )
      Glen Allen, VA, 23060 – 6808   )
   )
-AND-   )
   )
**BLUE RIDGE REHABILITATION**   )
**AND NURSING LLC,**   )
   )
<u>**SERVE**</u>: R/A: Vcorp Agent Services, Inc.   )
      4701 Cox Rd Ste 285   )
      Glen Allen, VA, 23060 – 6808   )
   )
-AND-   )
   )

2

**BAY POINTE REHABILITATION**
**AND NURSING LLC,**                                    )
                                                        )
                                                        )
<u>**SERVE**</u>: R/A: C T Corporation System           )
         4701 Cox Rd Ste 285                            )
         Glen Allen, VA, 23060 – 6808                   )
                                                        )
-AND-                                                   )
                                                        )
**BIRCHWOOD PARK REHABILITATION**                       )
**AND NURSING LLC,**                                    )
                                                        )
<u>**SERVE**</u>: R/A: C T Corporation System           )
         4701 Cox Rd Ste 285                            )
         Glen Allen, VA, 23060 – 6808                   )
                                                        )
-AND-                                                   )
                                                        )
**CYPRESS POINT REHABILITATION**                        )
**AND NURSING LLC,**                                    )
                                                        )
<u>**SERVE**</u>: R/A: C T Corporation System           )
         4701 Cox Rd Ste 285                            )
         Glen Allen, VA, 23060 – 6808                   )
                                                        )
-AND-                                                   )
                                                        )
**NASSAWADOX REHABILITATION**                           )
**AND NURSING LLC,**                                    )
                                                        )
<u>**SERVE**</u>: R/A: C T Corporation System           )
         4701 Cox Rd Ste 285                            )
         Glen Allen, VA, 23060 – 6808                   )
                                                        )
-AND-                                                   )
                                                        )
**NORVIEW HEIGHTS REHABILITATION**                      )
**AND NURSING LLC,**                                    )
                                                        )
<u>**SERVE**</u>: R/A: C T Corporation System           )
         4701 Cox Rd Ste 285                            )
         Glen Allen, VA, 23060 – 6808                   )
                                                        )
-AND-                                                   )
                                                        )

3

**NORTHERN CARDINAL REHABILITATION**    )
**AND NURSING LLC,**                     )
                                         )
<u>SERVE</u>: R/A: Vcorp Agent Services, Inc.  )
      4701 Cox Rd Ste 285          )
      Glen Allen, VA, 23060 – 6808  )
                                         )
-AND-                                    )
                                         )
**NANS POINTE REHABILITATION**           )
**AND NURSING LLC,**                     )
                                         )
<u>SERVE</u>: R/A: C T Corporation System    )
      4701 Cox Rd Ste 285          )
      Glen Allen, VA, 23060 – 6808  )
                                         )
-AND-                                    )
                                         )
**OLD DOMINION REHABILITATION**          )
**AND NURSING LLC,**                     )
                                         )
<u>SERVE</u>: R/A: Vcorp Agent Services, Inc.  )
      4701 Cox Rd Ste 285          )
      Glen Allen, VA, 23060 – 6808  )
                                         )
-AND-                                    )
                                         )
**THALIA GARDENS REHABILITATION**        )
**AND NURSING LLC,**                     )
                                         )
<u>SERVE</u>: R/A: C T Corporation System    )
      4701 Cox Rd Ste 285          )
      Glen Allen, VA, 23060 – 6808  )
                                         )
-AND-                                    )
                                         )
**VA SNF CONSULTING LLC,**               )
**d/b/a Eastern Healthcare Group**,      )
                                         )
<u>SERVE</u>: R/A: C T Corporation System    )
      4701 Cox Rd Ste 285          )
      Glen Allen, VA, 23060 – 6808  )
                                         )
-AND-                                    )
                                         )

4

| | |
|---|---|
| **ROANOKE OPCO HOLDCO LLC,** | ) |
| | ) |
| **<u>SERVE</u>**: Capitol Corporate Services, Inc. | ) |
|   10 S Jefferson St Ste 1800 | ) |
|   Roanoke, VA, 24011 | ) |
| | ) |
| -AND- | ) |
| | ) |
| **VA SNF MASTER CONSULTING LLC,** | ) |
| **d/b/a Eastern Healthcare Group**, | ) |
| | ) |
| **<u>SERVE</u>**: R/A: Vcorp Agent Services, Inc. | ) |
|   4701 Cox Rd Ste 285 | ) |
|   Glen Allen, VA, 23060 – 6808 | ) |
| | ) |
|      *Defendants*. | ) |

## PLAINTIFF'S FIRST COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND RELATED STATE STATUTES

COME NOW Plaintiffs Kraeema Johnson ("Ms. Johnson") and Ketitia Stanley ("Ms. Stanley"), through undersigned counsel, individually and on behalf of other members of the general public similarly situated (collectively, "Plaintiffs"), and file this Complaint against Defendants Old Southwest Health and Rehabilitation, LLC ("Old Southwest"), Seven Hills Rehabilitation and Nursing LLC ("Seven Hills"), Roanoke Rehab & Healthcare Center LLC ("Roanoke Rehab"), River Edge Rehabilitation and Nursing LLC ("River Edge"), Wythe VA OpCo LLC, d/b/a Mountain Laurel Rehabilitation and Nursing ("Mountain Laurel"), Greene Acres Rehabilitation and Nursing LLC ("Greene Acres"), Deer Meadows Rehabilitation and Nursing LLC ("Deer Meadows"), Blue Ridge Rehabilitation and Nursing LLC ("Blue Ridge"), Bay Pointe Rehabilitation and Nursing LLC ("Bay Pointe"), Birchwood Park Rehabilitation and Nursing LLC ("Birchwood Park"), Cypress Point Rehabilitation and Nursing LLC ("Cypress Point"), Nassawadox Rehabilitation and Nursing LLC ("Nassawadox"), Norview Heights Rehabilitation and Nursing LLC ("Norview Heights"), Northern Cardinal Rehabilitation and Nursing LLC

("Northern Cardinal"), Nans Pointe Rehabilitation and Nursing LLC ("Nans Pointe"), Old

Dominion Rehabilitation and Nursing LLC ("Old Dominion"), Thalia Gardens Rehabilitation and

Nursing LLC ("Thalia Gardens"), VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA

SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master")

(collectively "Defendants") for failing to pay its employees all non-discretionary bonuses they

earned and for failing to include non-discretionary bonuses earned when calculating Plaintiffs'

overtime premiums and seeking all available relief under the Fair Labor Standards Act, 29 U.S.C.

§ 203 et seq. ("FLSA") and the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 et seq.

("VWPA"). Ms. Johnson also asserts individual claims for retaliation when she refused to violate

state law in order to keep her job. Ms. Johnson's FLSA claims are asserted as a collective action

pursuant to 29 U.S.C. § 216(b), her VWPA claims are asserted as a class action pursuant to Fed.

R. Civ. P. 23, and her remaining claims are asserted individually. Ms. Stanley also asserts

individual claims for race-based discrimination under Title VII. Ms. Stanley's FLSA claims are

asserted as a collective action pursuant to 29 U.S.C. § 216(b), her VWPA claims are asserted as a

class action pursuant to Fed. R. Civ. P. 23, and her remaining claims are asserted individually.

The following allegations are based on personal knowledge as to Ms. Johnson and Ms.

Stanley's own conduct and are made on information and belief as to the acts of all others. Ms.

Johnson and Ms. Stanley, individually and on behalf of others similarly situated, hereby state as

follows:

**INTRODUCTION**

1.      This case involves Defendants' refusal to pay Plaintiffs for all non-discretionary

bonuses they earned and failing to incorporate non-discretionary bonuses when calculating their

regular rates of pay and overtime premiums.

2.      Defendants, acting as integrated employers, promised Plaintiffs they would pay Plaintiffs sign-on bonuses of between $2,000 - $5,000 to entice them to work for Defendants.

3.      Defendants, acting as integrated employers, failed to pay the promised bonuses and failed to incorporate the prorated portion of these bonuses in Plaintiffs' regular rates of pay or overtime premiums.

4.      Defendants also failed to incorporate other non-discretionary bonuses that were earned and paid (such as extra shift bonuses and shift differentials) in Plaintiffs' regular rates of pay or their overtime premiums.

5.      When Defendant Old Southwest demanded Ms. Johnson stay four hours past the end of her scheduled shift that ended at 7:00 p.m., Ms. Johnson responded that she could only stay one additional hour because her two-year-old daughter's daycare closed at 8:00 p.m. She informed Defendant Old Southwest that she would be reported to child protective services if she did not pick up her daughter on time. In response, Defendant Old Southwest terminated Ms. Johnson's employment for refusing to violate the law by staying at work and neglecting her child's welfare.

6.      In January 2023 and February 2023, Ms. Stanley was twice demoted from her positions as Nursing Scheduler and Essential Supply Coordinator and replaced with White women. Management has refused to speak with her since she was demoted.

## I.      JURISDICTION AND VENUE

7.      This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq, the Virginia Wage Payment Act ("VWPA"), Va. Code Ann. § 40.1-29 et seq., Virginia's whistleblower statute: Va. Code Ann. § 40.1-27.3, Title VII, 42 U.S.C. § 2000e et seq., Va. Code Ann. § 2.2-3900 et seq., and the common law of Virginia (*Bowman* claim).

8.     This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9.     This Court has supplemental subject matter jurisdiction over the claims arising under Virginia state law because they are so related to the federal claims that they form part of the same case or controversy.  28 U.S.C.§ 1367.

10.     Venue lies in the Western District of Virginia ("this District") under 28 U.S.C. § 1391 because Defendants employed Ms. Johnson, Ms. Stanley, and other similarly situated employees in Virginia, a substantial part of the events or omissions giving rise to the claim occurred in Virginia, and Defendants have done substantial business in Virginia.

## II.     THE PARTIES

### Ms. Johnson

11.     Ms. Kraeema Johnson is an individual, a United States citizen, and a resident of the Commonwealth of Virginia living in Roanoke, Virginia.

12.     At all times relevant herein, Kraeema Johnson was employed by Defendant Old Southwest as an hourly, non-exempt Licensed Practical Nurse ("LPN") at Defendant Old Southwest's facility located at 324 King George Ave SW, Roanoke, VA 24016.

13.     Ms. Johnson brings this action on behalf of herself and those similarly situated, and she has given her written consent to bring this action to require Defendants to pay her and all others similarly situated for all unpaid bonuses and overtime as required and seeks all available remedies for Defendants' violations of the FLSA and VWPA.  Pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b), Ms. Johnson's consent is attached hereto as **Exhibit 1**.

14.     Ms. Johnson also asserts individual claims against Defendant Old Southwest for violations of Virginia's whistleblower statute, Va. Code Ann. § 40.1-27.3, and the common law of Virginia (*Bowman* claim).

**Ms. Stanley**

15.     Plaintiff Ketitia Stanley is an individual, a United States citizen, and a resident of the Commonwealth of Virginia living in Roanoke, Virginia.

16.     At all times relevant herein, Ketitia Stanley was employed by Defendant Old Southwest as either an hourly, non-exempt Nursing Scheduler, Essential Supply Coordinator, or Certified Nursing Assistant ("CNA") at Defendant Old Southwest's facility located at 324 King George Ave SW, Roanoke, VA 24016.

17.     Ms. Stanley brings this action on behalf of herself and those similarly situated, and she has given her written consent to bring this action to require Defendants to pay her and all others similarly situated for all unpaid bonuses and overtime as required and seeks all available remedies for Defendants' violations of the FLSA and VWPA.  Pursuant to Fed. R. Civ. P. 23 and 29 U.S.C. § 216(b), Ms. Stanley's consent is attached hereto as **Exhibit 2**.

**Proposed Collective Class 1 (FLSA)**:

18.     All employees of any of Defendants' facilities in Virginia at any time between July August 27, 2021, and August 27, 2024, who were promised sign-on bonuses but did not receive them.

**Proposed Collective Class 2 (FLSA)**:

19.     All non-exempt employees of any of Defendants' facilities in Virginia at any time between August 27, 2021, and August 27, 2024, who earned non-discretionary bonuses that were not included in their regular rates of pay or overtime premiums.

20.    Under 29 U.S.C. § 216(b), employees at any of Defendants' facilities must affirmatively opt-in to become members of either FLSA class.

**Proposed Fed. R. Civ. P. 23 Class 1 (VWPA and Breach of Contract)**:

21.    All employees of any of Defendants' facilities in Virginia at any time between August 27, 2021, and August 27, 2024, who were promised sign-on bonuses but did not receive them.

22.    This violation gives rise to claims under the VWPA and for breach of contract under the common law of Virginia.

23.    Under Fed. R. Civ. P. 23, employees at any of Defendants' facilities must affirmatively opt-out if they do not wish to be members of this class.

**Proposed Fed. R. Civ. P. 23 Class 2 (VWPA)**:

24.    All employees of any of Defendants' facilities in Virginia at any time between August 27, 2021, and August 27, 2024, who earned non-discretionary bonuses that were not included in their regular rates of pay or overtime premiums.

25.    This violation gives rise  to claims under the VWPA.

26.    Under Fed. R. Civ. P. 23, employees at any of Defendants' facilities must affirmatively opt-out if they do not wish to be members of this class.

**Defendant Old Southwest Health and Rehabilitation, LLC**

27.    Defendant Old Southwest Health and Rehabilitation, LLC ("Old Southwest") is a Limited Liability Company formed in the State of New Jersey.

28.    Old Southwest is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

29.     Old Southwest employed Ms. Johnson at its facility in Roanoke, Virginia.

**Defendant  Seven Hills Rehabilitation and Nursing LLC**

30.     Defendant Seven Hills Rehabilitation and Nursing LLC ("Seven Hills") is a Limited Liability Company formed in the State of New Jersey.

31.     Seven Hills is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant  Roanoke Rehab & Healthcare Center LLC**

32.     Defendant Roanoke Rehab & Healthcare Center LLC ("Roanoke Rehab") is a Limited Liability Company formed in the State of New Jersey.

33.     Roanoke Rehab is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant  River Edge Rehabilitation and Nursing LLC**

34.     Defendant River Edge Rehabilitation and Nursing LLC ("River Edge") is a Limited Liability Company formed in the State of New Jersey.

35.     River Edge is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant  Wythe VA OpCo LLC**

36.     Defendant Wythe VA OpCo LLC, d/b/a Mountain Laurel Rehabilitation and Nursing ("Mountain Laurel") is a Limited Liability Company formed in the State of New Jersey.

37.     Mountain Laurel is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant  Greene Acres Rehabilitation and Nursing LLC**

38.     Defendant Greene Acres Rehabilitation and Nursing LLC ("Greene Acres") is a Limited Liability Company formed in the State of New Jersey.

39.     Greene Acres is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant  Deer Meadows Rehabilitation and Nursing LLC**

40.     Defendant Deer Meadows Rehabilitation and Nursing LLC ("Deer Meadows") is a Limited Liability Company formed in the State of New Jersey.

41.     Deer Meadows is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Blue Ridge Rehabilitation and Nursing LLC**

42.     Defendant Blue Ridge Rehabilitation and Nursing LLC ("Blue Ridge") is a Limited Liability Company formed in the State of New Jersey.

43.     Blue Ridge is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Bay Pointe Rehabilitation and Nursing LLC**

44.    Defendant Bay Pointe Rehabilitation and Nursing LLC ("Bay Pointe") is a Limited Liability Company formed in the State of New Jersey.

45.    Bay Pointe is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Birchwood Park Rehabilitation and Nursing LLC**

46.    Defendant Birchwood Park Rehabilitation and Nursing LLC ("Birchwood Park") is a Limited Liability Company formed in the State of New Jersey.

47.    Birchwood Park is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Cypress Point Rehabilitation and Nursing LLC**

48.    Defendant Cypress Point Rehabilitation and Nursing LLC ("Cypress Point") is a Limited Liability Company formed in the State of New Jersey.

49.    Cypress Point is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Nassawadox Rehabilitation and Nursing LLC**

50.    Defendant Nassawadox Rehabilitation and Nursing LLC ("Nassawadox") is a Limited Liability Company formed in the State of New Jersey.

51.    Nassawadox is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Norview Heights Rehabilitation and Nursing LLC**

52.    Defendant Norview Heights Rehabilitation and Nursing LLC ("Norview Heights") is a Limited Liability Company formed in the State of New Jersey.

53.    Norview Heights is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Northern Cardinal Rehabilitation and Nursing LLC**

54.    Defendant Northern Cardinal Rehabilitation and Nursing LLC ("Northern Cardinal") is a Limited Liability Company formed in the State of New Jersey.

55.    Northern Cardinal is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Nans Pointe Rehabilitation and Nursing LLC**

56.    Defendant Nans Pointe Rehabilitation and Nursing LLC ("Nans Pointe") is a Limited Liability Company formed in the State of New Jersey.

57.    Nans Pointe is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Old Dominion Rehabilitation and Nursing LLC**

58.    Defendant Old Dominion Rehabilitation and Nursing LLC ("Old Dominion") is a Limited Liability Company formed in the State of New Jersey.

59.    Old Dominion is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Thalia Gardens Rehabilitation and Nursing LLC**

60.    Defendant Thalia Gardens Rehabilitation and Nursing LLC ("Thalia Gardens") is a Limited Liability Company formed in the State of New Jersey.

61.    Thalia Gardens is part of a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant Roanoke OpCo HoldCo LLC**

62.    Defendant Roanoke OpCo HoldCo LLC ("Roanoke OpCo") is a Limited Liability Company formed in the State of New Jersey.

63.    Roanoke OpCo handles the payroll for a state-wide chain of nursing homes managed by VA SNF Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF"), and VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master").

**Defendant VA SNF Consulting LLC, d/b/a Eastern Healthcare Group**

64.    Defendant VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF") is a Limited Liability Company formed in the State of New Jersey.

65.    VA SNF manages the aforementioned nursing facilities under the brand name Eastern Healthcare Group.

15

## Defendant VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group

66.     Defendant VA SNF Master Consulting LLC, d/b/a Eastern Healthcare Group ("VA SNF Master") is a Limited Liability Company formed in the State of Delaware.

67.     VA SNF Master manages the aforementioned nursing facilities under the brand name Eastern Healthcare Group.

68.     VA SNF Master and/or VA SNF operate the website https://www.ehg.care and each of the websites associated with the facilities they operate.

## Defendants, Acting as a Single Integrated Employer

69.     During all relevant times, Defendants, as an integrated employer, have managed, overseen, and directed Ms. Johnson, Ms. Stanley, and other similarly situated employees, including the promulgation and enforcement of policies affecting the payment of wages, including overtime compensation.

70.     During all relevant times, Defendants have operated nursing homes that are related to one another as locations that are each owned and managed by the Eastern Healthcare Group.

71.     During all relevant times, Defendants have not been completely disassociated with respect to the work of Ms. Johnson, Ms. Stanley, and other similarly situated employees.

72.     During all relevant times, Defendants VA SNF and VA SNF Master exerted a centralized control over the other defendants through a shared website[1] that details the care they provide at each of their facilities.

73.     During all relevant times, Defendants VA SNF and VA SNF Master exerted a centralized control over decisions concerning payroll and human resources by requiring human

---

[1] https://www.ehg.care/our-services/ (showing a shared website detailing the work that their skilled nurses do at each of their nursing home locations) (last visited August 27, 2024).

resources personnel at the nursing homes to submit to any decisions made by VA SNF and VA SNF Master's human resources departments.

74.    During all relevant times, Defendants are and have been jointly involved in the operational decisions of each other.

75.    During all relevant times, Defendants have been jointly involved in the employment decisions of each other, including, but not limited to decisions about their wage and hour policies and practices that affect Plaintiff and all other similarly situated employees.

76.    Defendants operate and control an enterprise and employ employees engaged in commerce or in the production of goods for commerce, or have had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person with an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

## III.    EXHAUSTION OF AGENCY REMEDIES

77.    On May 19, 2023, Ketitia Stanley submitted a Charge (**Exhibit 3**) to the EEOC outlining the factual bases for her allegations of race-based discrimination and asked that agency to investigate.

78.    On June 6, 2024, Ms. Stanley asked the EEOC to issue a Notice of Right to Sue (**Exhibit 4**) which it provided later that day.

## IV.    LEGAL PRINCIPLES: COLLECTIVE ACTION ALLEGATIONS

### A.    The Fair Labor Standards Act

79.    The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 et seq., establishes minimum wage, overtime pay, record keeping, and employment standards for employees in the

private sector and in federal, state, and local government.  Defendants are subject to the FLSA's overtime requirements because their annual gross volume of sales is not less than $500,000.

80.    Under the FLSA, employers must pay non-exempt hourly employees such as Ms. Johnson for all hours the employer suffers or permits them to work.

81.    Moreover, non-exempt hourly employees must receive not less than time and one-half (1.5) their regular rate of pay that week for all hours worked beyond 40 each week.

82.    29 USC § 207(e) states that "the regular rate of pay should include all remuneration for the employment paid to … the employee."

83.    29 CFR § 778.208 states that the only types of payment that can be excluded from the regular rate of pay calculations are as follows: discretionary bonuses, gifts and payments on special occasions, contributions by employers to certain welfare plans, payments made by the employer pursuant to certain profit-sharing, thrift and savings plans.

84.    29 CFR § 778.208 also states that bonuses which do not qualify under these exclusions from the regular rate must be totaled in with other earnings to determine the regular rate on which overtime pay must be based (See Department of Labor Fact Sheet # 56C.)

85.    Under 29 U.S.C. § 216(b), "Any employer who violates the provisions of  section 206 or section 207 of this title [concerning minimum wage and overtime wages] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages" in addition to attorney fees and costs.

**B.    The Virginia Wage Payment Act, Va. Code Ann. § 40.1-29, et seq.**

86.    The VWPA requires employers to timely pay employees for all hours worked and to comply with the FLSA's minimum wage and overtime requirements.

87.     Under Va. Code Ann. § 40.1-29(J), "if an employer fails to pay wages to an employee in accordance with this section or § 40.1-29.2, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b), against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G [8%], and reasonable attorney fees and costs."

88.     Moreover, "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section or § 40.1-29.2, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs." Id.

89.      "[A] person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information.

90.     Establishing that a person acted knowingly shall not require proof of specific intent to defraud." Va. Code Ann. § 40.1-29(J).

91.     Under Va. Code Ann. § 40.1-29(L), affected employees have three years to seek damages for violations of the VWPA.

### C.     Breach of Contract

92.     Under Virginia common law, an employment contract is valid if it includes offer, acceptance, and consideration.

93.     A party who fails to comply with the terms of the contract without justification is deemed to be in breach of that contract.

94.    The non-breaching party may file suit to collect the damages produced by that breach within five (5) years if the contract is in writing or three (3) years if the contract is oral.

## V.    LEGAL PRINCIPLES: INDIVIDUAL ALLEGATIONS

### A.    Virginia's Whistleblower Retaliation Statute, Va. Code Ann. § 40.1-27.3

95.    Va. Code Ann. § 40.1-27.3 forbids employers from retaliating against employees when the employee "[o]r a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official …."

96.    Employees who are retaliated against for internally reporting violations of state or federal law are entitled to "bring a civil action in a court of competent jurisdiction within one year of the employer's prohibited retaliatory action." Va. Code Ann. § 40.1-27.3(C).

97.    "The court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs." Id.

### B.    *Bowman* claim under Virginia Common Law

98.    Under Virginia common law, employers are forbidden from retaliating against employees who complain about or oppose violations of a law that expresses a public policy of Virginia. This is known as a "*Bowman* claim."

99.    The discharged employee must also show that he or she is within the class of persons the statute is designed to protect.

20

100.    Under Virginia law, terminating an employee for refusing to commit a crime is a textbook *Bowman* claim.  Mitchem v. Counts, 259 Va. 179, 190 (2000) ("the General Assembly did not intend that the employment-at-will doctrine … serve as a shield for employers who seek to force their employees, under the threat of discharge, to engage in criminal activity").

101.    Several Virginia statutes, including Va. Code Ann. § 18.2-371 and Va. Code Ann. § 18.2-371.1 punish child neglect.

102.    An employee alleging a valid *Bowman* claim may recover both compensatory and punitive damages.

## C.    Discrimination under Title VII, 42 U.S.C. § 2000e et seq.

103.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 200e, et seq. forbids discrimination or retaliation on the basis of race, color, religion, sex, or national origin.

## VI.    STATEMENT OF FACTS

104.    In December 2023, Ms. Johnson began working full time for Defendants at Old Southwest as a licensed practical nurse (LPN), providing direct nursing care to the residents and supervising the day-to-day nursing activities performed by nursing assistants at Defendants' nursing home in Roanoke, Virginia.

105.    Defendants agreed to pay Ms. Johnson:

a.    $35/hr.;

b.    overtime pay at 150% the regular rate for all hours worked beyond forty each week;

c.    a sign-on bonus of $3,500 to be paid out in split payments; and

d.    bonuses ranging from $75 to $150 per extra shift picked up.

106.    Ms. Johnson accepted these conditions and began working at Old Southwest as a licensed practical nurse.

107.    Defendants' websites included advertisements promising sign-on bonuses and overtime paid at 1.5 times the regular rate appeared on Defendants' websites for various positions such as Licensed Practical Nurses, Registered Nurses, and Certified Nursing Assistants.

108.    For each of these positions, Defendants promised a sign-on bonus that would be paid out in split payments quarterly.

109.    The sign-on bonus ranged from $2,000 to $5,000 depending on the applicant's level of certification.

110.    Defendants informed employees they could earn additional bonuses by taking extra shifts as needed to fill otherwise vacant shifts.

111.    Defendants advertised the sign-on bonus through online job listings and postings that appeared in the lobbies of Defendants' nursing homes.

112.    The supervisor that interviewed Ms. Johnson further notified her about the sign-on bonus and extra shift bonuses during her interview for the job and during orientation.

113.    The supervisor also told Ms. Johnson that if she took on extra shifts, she would be paid a bonus on top of the hourly pay for that shift; the bonus amount would range from $75 to $150 based on the needs of the nursing home and the timing of the shift.

114.    The supervisor conducting Ms. Johnson's orientation told her that the sign-on bonus, which for her was set at $3,500, would be paid to her in two payments with the first being three months after she started.

115.    Defendants failed to pay the aforementioned sign-on bonuses to numerous employees, including Ms. Johnson.

116.    Defendant withheld sign-on bonuses from Black employees and employees born in foreign countries at a higher rate than it withheld them from White employees born in the United States.

117.    After working for three months, Ms. Johnson began asking her supervisors about the sign-on bonus and when she should expect to receive it.

118.    Ms. Johnson first approached Marianne, Defendants' then-director of nursing (DON) for Old Southwest, to determine when she would receive her bonus.

119.    Director Marianne told Ms. Johnson she should speak with the administrator about the bonus because payroll was not part of her duties.

120.    The then-administrator directed Ms. Johnson to the Human Resources (HR) department if she wanted to know more about the sign-on bonus.

121.    However, an HR representative was not available to speak with Ms. Johnson because the department lacked employees and was going through massive changes.

122.    Instead, Ms. Johnson was told to get in contact with corporate HR because it had more authority to help her answer her question.

123.    Ms. Johnson asked both the then-director and the then-administrator to send e-mails on her behalf to the corporate HR department to learn more about when she could expect to receive her bonus.

124.    They informed her that corporate HR had plans to be at Old Southwest in a few weeks and would be able to answer her questions then.

125.    Defendants unlawfully terminated Ms. Johnson less than a month after she began asking questions about the unpaid bonus.

126.    Not only did Defendants fail to pay many of their employees' promised bonuses, but they also failed to include all bonuses, whether paid or not, in the regular rate of pay calculations for Ms. Johnson, Ms. Stanley, and others similarly situated.

127.    Throughout Ms. Johnson's time at Old Southwest, she earned bonuses for picking up extra shifts that were not accurately reflected in her regular rate of pay and overtime pay. (See, e.g., **Exhibit 5**) (reflecting the following violations)

    a.  During the pay period for 3/31/24 to 4/13/24, Defendant underpaid Ms. Johnson by $265.62 (calculated at a regular rate of 41.33/hr. and an overtime rate of $61.99/overtime hour);

    b.  During the pay period for 3/17/24 to 3/30/24, Defendant underpaid Ms. Johnson by $269.34 (calculated at a regular rate of 39.64/hr. and an overtime rate of $59.46/overtime hour);

    c.  During the pay period for 3/03/24 to 3/16/24, Defendant underpaid Ms. Johnson by $273.45 (calculated at a regular rate of 41.44/hr. and an overtime rate of $62.16/overtime hour);

    d.  During the pay period for 2/18/24 to 3/2/24, Defendant underpaid Ms. Johnson by $301.35 (calculated at a regular rate of $42.03/hr. and an overtime rate of $63.05/overtime hour);

    e.  During the pay period for 2/4/24 to 2/17/24, Defendant underpaid Ms. Johnson by $330.38 (calculated at a regular rate of $44.06/hr. and an overtime rate of $66.09/overtime hour); and

    f.   During the pay period for 1/21/24 to 2/3/24, Defendant underpaid Ms. Johnson by $275.78 (calculated at a regular rate of $47.40/hr. and an overtime rate of $71.11/overtime hour).

128.   The failure to incorporate these bonuses into the regular rate of pay resulted in the unlawful failure to pay Ms. Johnson, Ms. Stanley, and others similarly situated the full amounts that they were owed under the law.

129.   Because of their failure to add in the bonuses to the regular rate and overtime rate of pay, Defendants paid Ms. Johnson, Ms. Stanley, and others similarly situated less than the amount that they were legally entitled to for their overtime during each pay period.

130.   On Friday, April 12, 2024, Defendants scheduled Ms. Johnson to work a twelve-hour shift that would last from 7 A.M. to 7 P.M.

131.   Friday, at 5:30 P.M., local police arrived at the nursing home, asked to speak with the administrator, Vicky, and informed her of their plans to arrest the employee that was scheduled to relieve Ms. Johnson when her shift was over.

132.   At 5:45 P.M., the administrator asked Ms. Johnson to stay for four more hours, which would extend her shift to 11:00 P.M.

133.   Ms. Johnson informed the administrator that she could not stay that long because her daughter was at daycare and needed to be picked up at 8 P.M.

134.   The administrator said that was acceptable and did not bring up the need for Ms. Johnson to extend her shift again.

135.   At 7:50 P.M., when Ms. Johnson realized that no one else was present to take over her shift, she again approached the administrator to determine what should be done before she left.

136.    While in the lobby of the nursing home, the administrator called the director of nursing, Nicole, placed Nicole on speaker phone, and asked her who was going to relieve Ms. Johnson.

137.    The director answered the phone and said that Ms. Johnson knew she needed to continue working until 11 P.M.

138.    Ms. Johnson explained to Nicole (the director) that she could not work until 11 P.M. because her two-year-old daughter was still at daycare.

139.    She further explained that the daycare closed at 8 P.M. and that if she was not there to pick up her daughter, Child Protective Services (CPS) would be called to pick up the child.

140.    If the daycare had called CPS, Ms. Johnson would have been charged with child abuse and could have lost custody of her child.

141.    After Ms. Johnson explained that she needed to pick up her daughter at 8 P.M. to avoid involving CPS, Nicole stated that Ms. Johnson knew that no one else lived close enough to pick up her shift and that most of the administration lived in Lynchburg which is an hour away.

142.    Ms. Johnson explained that Nicole knew about the police arresting her relief around 5:45 P.M. and that Nicole only lived an hour away; she also mentioned that Nicole had over two hours prior to her leaving at 8 P.M. to find someone else or to come herself to provide the relief.

143.    The director told Ms. Johnson, "If you leave, this is your resignation."

144.    Ms. Johnson responded, " I don't want to resign, but I still have to pick up my daughter at her daycare which is closing at 8 P.M."

145.    The director responded, "Well, you're fired. Don't step foot back in my building."

146.    After being unlawfully terminated for refusing to break the law, Ms. Johnson left the nursing home to pick up her daughter from daycare.

147.    In 2015, Ketitia Stanley started working for Defendant Old Southwest as a Certified Nursing Assistant ("CNA").

148.    After being hired, she worked for Defendant Old Southwest receiving praise for her accomplishments and earned two promotions to Nursing Scheduler and Essential Supply Coordinator.

149.    However, without warning, in January 2023 and February 2023, Ms. Stanley was demoted from both positions.

150.    During the first demotion, Defendant Old Southwest removed Ms. Stanley from the position of Essential Supply Coordinator.

151.    When she asked about the demotion, Ms. Seale told Ms. Stanley she needed to focus solely on her scheduling work.

152.    Defendant Old Southwest gave Ms. Stanley's Essential Supply Coordinator position to a White woman who had worked for Defendant for a shorter time than Ms. Stanley.

153.    Shortly after, Defendant Old Southwest again demoted Ms. Stanley by taking away her position as Nursing Scheduler.

154.    When asked for a reason, management told Ms. Stanley that she had been over scheduling her "friends" from Gale Agency ("Gale"), a nursing staffing agency, that worked with defendant Old Southwest and providing them with bonuses even when they didn't work.

155.    Ms. Seale never provided Ms. Stanley any examples of the "friends" or instances where she supposedly over scheduled nurses from Gale.

156.    While working for Defendants, Ms. Stanley had no power over payroll or compensation related practices.

157.    She did not have any authority to offer bonuses to anyone whether they worked or not.

158.    Instead, bonuses were solely within the powers of HR and the administrators.

159.    Again, Ms. Stanley's position was promptly given to a White woman.

160.    After demoting her twice, management told Ms. Stanley she would be scheduled as a CNA going forward and still had a job with Defendant.

161.    However, Ms. Stanley was never scheduled as a CNA after the demotions.

162.    Defendant Old Southwest failed to ever include her on the schedule as a CNA.

163.    After some time without being scheduled, Ms. Stanley called Ms. Seale and texted her to inquire about her schedule as a CNA.

164.    Ms. Seale never responded to any of her texts, never answered any of her calls, and never returned any of her voicemails.

165.    After a few weeks of not being scheduled, Ms. Stanley went to Defendant Old Southwest's HR office to speak with Amber Fortenberry about not being scheduled.

166.    Ms. Fortenberry told Ms. Stanley that she understood how a demotion could have occurred but did not understand why Ms. Stanley was not being scheduled.

167.    Ms. Fortenberry told Ms. Stanley she was never given a reason for the demotion or a reason for her not being on the schedule.

168.    After reviewing her records, Ms. Fortenberry informed Ms. Stanley that nothing in her file provided any basis for the demotions she received or the lack of scheduling

169.    By the end of the meeting, Ms. Fortenberry told Ms. Stanley that the only explanation she could come up with for the demotion and the lack of scheduling was race-based discrimination.

170.    Ms. Fortenberry advised Ms. Stanley to contact professional help to further deal with the matter.

171.    Co-workers that continued working for Defendant Old Southwest told Ms. Stanley that the White woman who replaced her as the Nursing Scheduler was scheduling more nurses from Gale than she was before she was demoted.

172.    To her knowledge, this White employee has never been reprimanded for over scheduling Gale nurses despite Ms. Stanley's demotion for that same alleged offense.

173.    Since February 14, 2023, Defendant Old Southwest has <u>never</u> scheduled Ms. Stanley and effectively terminated her employment without taking official action.

## VII.    CAUSES OF ACTION

**COUNT I**
**Collective Action for FLSA Violations**

174.    Ms. Johnson and Ms. Stanley hereby incorporate by reference paragraphs 1-173 as if fully restated in this Count I.

175.    Under the FLSA, Defendant was required to pay Ms. Johnson, Ms. Stanley, and all other similarly situated class members for all the time Defendant "suffer[ed] or permit[ted them] to work." 29 USC §§ 203(g), 206(a).

176.    Moreover, under 29 USC § 207(a)(1) of the FLSA, Defendant was required to pay Ms. Johnson and all other similarly situated class members "at a rate not less than one and one-half times the regular rate at which he is employed."

177.    Under 29 CFR § 778.208, the Defendant was required to include the sign-on bonuses and all other non-discretionary bonuses in the calculations for determining the regular rate of pay.

178.    By virtue of the acts described above, Defendant knowingly paid Ms. Johnson, Ms. Stanley, and all other similarly situated class members hundreds of thousands of dollars less in wages than they earned by failing to pay the sign-on bonuses they promised and failing to incorporate all bonuses, whether paid or not, in the calculations for determining the regular rate of pay during the pay period earned.

179.    Under § 216(b) of the FLSA, Defendant is liable to Ms. Johnson, Ms. Stanley, and other class members in the amount withheld, plus an additional amount in liquidated damages.

180.    Under § 216(b) of the FLSA, Defendant is also liable to pay the attorney fees and costs Ms. Johnson and other class members incur pursuing a remedy in this matter.

## COUNT II
### Class Action for VWPA Violations

181.    Ms. Johnson and Ms. Stanley reallege and incorporate by reference paragraphs 1-180 as if fully restated in this Count II.

182.    By virtue of the acts described above, Defendant knowingly paid Ms. Johnson, Ms. Stanley, and all other similarly situated class members hundreds of thousands of dollars less in wages than they earned by failing to include the sign-on bonuses and other non-discretionary bonuses in the calculations for the regular rate of pay during the pay periods that they were earned.

183.    Under Va. Code Ann. § 40.1-29.2, Ms. Johnson, Ms. Stanley, and other similarly situated class members are entitled to recover from Defendant "the applicable remedies, damages, or other relief available under the federal Fair Labor Standards Act in an action brought pursuant to the process in subsection J of § 40.1-29."

184.    Va. Code Ann. § 40.1-29(J) states, in relevant part :

if an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action

consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b), against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest thereon as provided in subsection G, and reasonable attorney fees and costs. If the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs.

185.    Under Va. Code Ann. § 40.1-29(K), "a person acts 'knowingly' if the person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information, or (iii) acts in reckless disregard of the truth or falsity of the information."

186.    "Establishing that a person acted knowingly shall not require proof of specific intent to defraud."  Id.

187.    Defendant acted 'knowingly' because it had actual knowledge of the sign-on bonuses and other non-discretionary bonuses it owed to Ms. Johnson, Ms. Stanley, and other similarly situated class members and knew it was required to include those bonuses in the regular rate of pay in order to be compliant with overtime laws.

188.    Defendant is therefore liable to Ms. Johnson, Ms. Stanley, and other class members in the amount withheld, plus an additional amount in liquidated damages -or- triple damages if this Court finds Defendant knowingly violated Va. Code Ann. § 40.1-29.2.

189.    Defendant is also liable to pay the attorney fees and costs Ms. Johnson, Ms. Stanley, and other class members incur pursuing a remedy in this matter.

## COUNT III
### Class Action for Breach of Contract

190.    Ms. Johnson realleges and incorporates by reference paragraphs 1-189 as if fully restated in this Count III.

191.    Defendants made valid employment contracts with Ms. Johnson and others similarly situated that included offers by the Defendants, acceptance by Ms. Johnson and others similarly situated, and consideration for both sides.

192.    Defendants failed to comply with the terms of the contract without justification when they failed to pay the sign-on bonuses to Ms. Johnson and others similarly situated.

193.    Because of this failure, Defendants are liable to Ms. Johnson and others similarly situated for the damages produced by the breach.

<u>**COUNT IV**</u>
**Individual Action for Whistleblower Retaliation (Ms. Johnson)**
**(Va. Code Ann. § 40.1-27.3)**

194.    Kraeema Johnson hereby incorporates by reference paragraphs 1-193 as if fully restated in this Count IV.

195.    Ms. Johnson, in good faith, refused to engage in violations of state and federal law when she reported to her supervisor that she would be violating the law if she worked the additional four hours without picking up her daughter from daycare when it closed.

196.    As a direct and proximate cause of Ms. Johnson's good faith efforts to refuse Defendant's demand for her to violate state and federal laws, Defendant terminated her employment.

197.    Ms. Johnson has lost her job and source of income as a result of refusing Defendant's demand for her to violate state and federal laws. Ms. Johnson will lose wages and benefits at a rate of approximately $1403.32 per week until she is reinstated to the position she previously held at Old Southwest.

198.    Under Va. Code Ann. § 40.1-27.3(C), Plaintiff is entitled to reinstatement, lost wages, and reasonable attorney fees and costs.

## COUNT V
### *Bowman* Claim (Ms. Johnson)
### (Virginia Common Law)

199.    Kraeema Johnson hereby incorporates by reference paragraphs 1-198 as if fully restated in this Count V.

200.    Under Virginia law, an at-will employee asserting a wrongful discharge claim must identify a Virginia statute establishing a public policy that was violated by the employer.

201.    Va Code Ann. § 18.2-371 states "[a]ny person 18 years of age or older, including the parent of any child, who (i) willfully contributes to, encourages, or causes any act, omission, or condition that renders a child … in need of supervision … is guilty of a Class 1 misdemeanor."

202.    Defendant terminated Ms. Johnson as a direct and proximate result of her refusal to engage in violations of state law.

203.    Under Virginia Common Law, Ms. Johnson is entitled to compensatory and punitive damages as a result of Defendant's unlawful termination of her employment.

## COUNT VI
### Race-based Discrimination (Ms. Stanley)
### (Title VII)

204.    Ketitia Stanley hereby incorporates by reference paragraphs 1-203 as if fully restated in this Count VI.

205.    Ms. Stanley was at all times hereto an employee of Defendant covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., prohibiting discrimination or harassment on the basis of race.

206.    Defendant Old Southwest is, and at all times material hereto was, an employer within the meaning of 42 U.S.C. § 2000e-b and as such was prohibited from discriminating against Plaintiff on the basis of race as set forth in 42 U.S.C. § 2000e-2(a).

207.    Plaintiff is African American and Black and is therefore a member of those protected classes within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000e, et seq.

208.    Defendant discriminated against Plaintiff on the basis of her race and color in violation of Title VII by engaging in a continuing course of conduct, which included, but is not limited to, the following acts:

    a.    Removing her from her position as Essential Supply Coordinator under the pretext that she needed to focus on her work as Nursing Scheduler;

    b.    Replacing her with a less experienced White employee despite Ms. Stanley's outstanding performance;

    c.    Demoting Plaintiff from her position as Nursing Scheduler shortly after telling her to focus on her scheduling work;

    d.    Replacing her again with a White employee despite her excellent performance;

    e.    Telling her that the reason for the demotion was that she was scheduling too many nurses from Gale;

    f.    Telling her that she would be placed on the schedule as a CNA;

    g.    Never actually scheduling her as a CNA and refusing to answer any calls or texts about her schedule;

    h.    Allowing her white replacement to schedule more Gale nurses than she did without reprimanding the white employee for the same thing that got her demoted.

209.    Plaintiff's protected statuses – African American and Black– were motivating factors for this discriminatory conduct.

210.    Plaintiff's supervisors and Defendant's nursing leadership were aware of this overtly discriminatory treatment because they participated in it.

211.    As a proximate result of Defendant's unlawful treatment of Plaintiff, Ms. Stanley has suffered lost wages, embarrassment, humiliation, and mental anguish, all in an amount to be established at the time of trial. Ms. Stanley will continue to lose wages until she is reinstated to her previous positions as both the Nursing Scheduler and the Essentials Supply Coordinator at Defendant Old Southwest's facility.

212.    Under 42 U.S.C. § 2000e-5, Ms. Stanley is entitled to recover compensatory damages, punitive damages, attorney fees, costs, and interest.

**COUNT VII**
**Retaliation for Reporting Discrimination (Ms. Stanley)**
**(Title VII, 42 U.S.C. § 2000e-3(a))**

213.    Ms. Stanley realleges and incorporates by reference paragraphs 1-212 as if fully set forth in this count VII.

214.    Plaintiff was at all times material hereto an employee of Defendant covered by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., prohibiting retaliation for reporting discrimination on the basis of race, gender, pregnancy, age, and disability.

215.    Defendant Old Southwest is, and at all times material hereto was, an employer within the meaning of 42 U.S.C. § 2000e-b and as such was prohibited from retaliating against Plaintiff as a result of her opposing unlawful discrimination practices as set forth in 42 U.S.C. § 2000e-3(a).

216.    Plaintiff reported the unlawful discrimination to which she was subjected on the following occasion:

    a.  Complaining to Amber Fortenberry, an HR representative for Defendant Old Southwest, about management not scheduling her as a CNA like they had promised;

    b.  Complaining to Ms. Fortenberry about the previous two demotions that had occurred;

    c.  Asking Ms. Fortenberry about possible notes and things in her file that might detail her demotion and the reason for it;

    d.  Telling Ms. Fortenberry that on both occasions she was replaced by a White employee that had less experience than her;

    e.  Concluding with Ms. Fortenberry that the real reason for her demotion was race-based discrimination.

217.    Subsequent to complaining about this race-based discrimination, Defendant retaliated against Plaintiff for her complaints by refusing to contact her about the scheduling and refusing to place her on the schedule.

218.    The management who stopped scheduling Ms. Stanley were very much aware of her efforts to oppose discriminatory practices because Ms. Stanley continued to call, leave voicemails, and text about getting on the schedule as a CNA.

219.    As a proximate result of Defendant's retaliation against Plaintiff, Ms. Stanley has suffered substantial losses in earnings and benefits. Plaintiff has also suffered embarrassment, humiliation, and mental anguish in an amount to be established at the time of trial.

220.    Under Title VII, Plaintiff is entitled to recover compensatory damages, punitive

damages, attorney fees, costs, and interest.

**COUNT VII**
**Retaliation for Reporting Discrimination (Ms. Stanley)**
**(Va. Code § 40.1-27.3)**

221.    Plaintiff realleges and incorporates by reference paragraphs 1-220 as if fully set

forth in this Count VII.

222.    By virtue of acts described above, Defendant retaliated against Ms. Stanley in

violation of Va. Code Ann. § 40.1-27.3 when it effectively terminated her employment because

she "in good faith report[ed] a violation of any federal or state law or regulation to a

supervisor…."

223.    The management who stopped scheduling Ms. Stanley were very much aware of

her efforts to oppose discriminatory practices because Ms. Stanley continued to call, leave

voicemails, and text about getting on the schedule as a CNA.

224.    Those violations of state and federal law included acts of discrimination against

Defendant's employees on the basis of race.

225.    Under Va. Code Ann. § 40.1-27.3(C), Ms. Stanley is entitled to reinstatement,

compensation for wages and benefits she lost following her unlawful termination, along with

pre-judgment interest, attorneys fees, and costs.

**VIII.   PRAYER FOR RELIEF**

**WHEREFORE**, Kraeema Johnson and Ketitia Stanley request judgment against

Defendants and move this Court for an Order:

a.    Certifying the proposed FLSA collective action under 29 U.S.C. § 216(b);

b.    Certifying the proposed VWPA class action under Fed. R. Civ. P. 23;

c.   Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA collective, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

d.   Directing prompt issuance of notice pursuant to Fed. R. Civ. P. 23(c)(2) to the VWPA class, apprising them of the pendency of this action and notifying them they must affirmatively opt out of the class if they do not wish to be included in this action;

e.   Declaring that Defendants violated the FLSA by failing to pay its employees for all work performed during handoffs;

f.   Awarding Ms. Johnson, Ms. Stanley, and  all others who join the proposed FLSA collective action damages in the amount of all wages unlawfully withheld, an equal amount in liquidated damages, plus pre-judgment and post-judgment interest, attorney fees, and costs;

g.   Awarding Ms. Johnson, Ms. Stanley, and all others who remain in the proposed VWPA class action damages in the amount of all wages unlawfully withheld, plus an equal amount in liquidated damages, at 8%, plus attorney fees and costs;

h.   Declaring that Defendants violated the VWPA by failing to pay its employees for all work performed during handoffs;

i.   Requiring Defendant Old Southwest to reinstate Kraeema Johnson to her previous position at Old Southwest;

j.   Requiring Defendant Old Southwest to reinstate Ketitia Stanley to her previous positions at Old Southwest;

k.  Awarding Ketitia Stanley compensatory damages in the amount to be determined once Ms. Johnson is reinstated and $350,000 in punitive damages for her unlawful termination;

l.  Awarding Kraeema Johnson compensatory damages in the amount to be determined once Ms. Johnson is reinstated and $350,000 in punitive damages for her unlawful termination;

m.  Awarding Ketitia Stanley her costs and fees incurred pursuing her individual claims as provided by Va. Code Ann. § 40.1-29 and Va. Code Ann. § 40.1-27.3; and

n.  Awarding Kraeema Johnson her costs and fees incurred pursuing her individual claims as provided by Va. Code Ann. § 40.1-29 and Va. Code Ann. § 40.1-27.3; and

o.  Providing such other and further relief as this Court may deem necessary, just, and proper.

**JURY TRIAL DEMANDED ON ALL ISSUES SO TRIABLE**

Respectfully Submitted,

**KRAEEMA JOHNSON and
KETITIA STANLEY, on behalf of
themselves and all others similarly
situated**

By: _/s/ Christopher E. Collins_
        Christopher E. Collins

_Counsel for Plaintiff_

Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)
**YUGO COLLINS, PLLC**
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiff*