# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

**KRAEEMA JOHNSON**, et al.,

        *Plaintiffs*,

  v.

**OLD SOUTHWEST HEALTH AND
REHABILITATION, LLC,** et al.,

        *Defendants*.

Civil Action No. 7:24-cv-00574-MFU-CKM

## STIPULATION AND SETTLEMENT AGREEMENT

PLAINTIFFS (on behalf of themselves and all members of the SETTLEMENT CLASS), DEFENDANTS, and their respective counsel of record enter into this SETTLEMENT AGREEMENT.[1]

## I.  RECITALS AND BACKGROUND

A.  On August 27, 2024, Plaintiffs Kraeema Johnson and Ketitia Stanley commenced this LITIGATION by filing a complaint in the United States District Court for the Western District of Virginia, Case Number 7:24-cv-00574-MFU-CKM (the "Action"). [*See* Docket No. 1, August 27, 2024, Case No. 7:24-cv-00574-MFU-CKM]. On February 12, 2025, Plaintiffs Kraeema Johnson, Ketitia Stanley, along with Sheree Payne, Jessica Davis, Latrivia Harris, and Kristian Stevens filed an amended complaint. These plaintiffs alleged that they and similarly situated individuals were not paid all wages owed, including overtime wages, related

---

[1] Terms that appear in all caps are defined terms. The definitions for these terms are contained in the Appendix to this SETTLEMENT AGREEMENT.

to bonuses in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Virginia Wage Payment Act (Va. Code § 40.1-29) ("VWPA"), and Virginia contract law. Additionally, Plaintiffs alleged various individual causes of action, including retaliation under the FLSA; *Bowman* claims under Virginia common law, claiming they were wrongfully terminated for opposing violations of state law or refusing to violate state public policy; whistleblower retaliation under Va. Code Ann. § 40.1-27.3; discrimination on the basis of race and color under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); retaliation under Title VII; and breach of contract for failure to pay promised wages. [*See* Docket No. 59, February 12, 2025, Case No. 7:24-cv-00574-MFU-CKM].  On March 31, 2025, PLAINTIFFS and DEFENDANTS filed a Joint Motion for a Stay of proceedings in order to explore a negotiated resolution of this Action. [*See* Docket No. 67, March 31, 2025, Case No. 7:24-cv-00574-MFU-CKM].

B.    The PARTIES have exchanged detailed information and conducted detailed legal and factual analyses of the PLAINTIFFS' claims and DEFENDANTS' defenses.

C.    The PARTIES engaged in good faith settlement discussions until August 15, 2025, when the PARTIES reached a mutually agreeable resolution in principle.

D.    Between August 15, 2025 and October 23, 2025, the PARTIES exchanged numerous drafts of this SETTLEMENT AGREEMENT and related documents addressing the resolution of PLAINTIFFS' CLAIMS, including a proposed SETTLEMENT NOTICE, PRELIMINARY APPROVAL ORDER, and exhibits to the SETTLEMENT AGREEMENT.

E.    The PARTIES' ongoing settlement negotiations have culminated in this SETTLEMENT AGREEMENT addressing the CLAIMS asserted in the LITIGATION.

F.    It is the desire and intention of the PARTIES that this SETTLEMENT AGREEMENT shall, for each member of the FINAL SETTLEMENT CLASS, fully, finally, and forever completely settle, compromise, release, and discharge any and all RELEASED CLAIMS (as defined below).

G.    PLAINTIFFS' Counsel has conducted a thorough investigation of the CLAIMS that PLAINTIFFS asserted against DEFENDANTS in the LITIGATION and/or that relate to or could have arisen out of the same facts alleged in the LITIGATION or relating to the employment as NURSING EMPLOYEES of the PLAINTIFFS and members of the SETTLEMENT CLASS, including both asserted and unasserted claims. Based on their independent investigation and evaluation, PLAINTIFFS' Counsel believe that the settlement of the RELEASED CLAIMS with DEFENDANTS for the consideration of and on the terms set forth in this SETTLEMENT AGREEMENT is fair, reasonable, and adequate, and is in the best interest of PLAINTIFFS and the members of the SETTLEMENT CLASS in light of all known facts and circumstances, including the risk of delay, defenses asserted by DEFENDANTS in response to the CLAIMS, and numerous potential certification, litigation, and appellate issues relating to the CLAIMS.

H.    The DEFENDANTS and RELEASED PERSONS expressly deny any liability or wrongdoing of any kind associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in this LITIGATION and claims of the PLAINTIFFS in the COMPLAINT. DEFENDANTS and RELEASED PERSONS contend they have complied with all applicable federal, state, and local laws at all times. By entering into the SETTLEMENT AGREEMENT, DEFENDANTS and RELEASED

3

PERSONS do not admit any liability or wrongdoing and expressly deny the same. Indeed, by entering into this SETTLEMENT AGREEMENT, DEFENDANTS other than Old Southwest Health and Rehabilitation, LLC do not admit and expressly deny that they employed any of the PLAINTIFFS or FINAL SETTLEMENT CLASS members. It is expressly understood and agreed by the PARTIES that the SETTLEMENT AGREEMENT is being entered into by DEFENDANTS solely for the purpose of avoiding the costs and disruption of ongoing litigation and resolving the RELEASED CLAIMS on the terms set forth herein. Nothing in the SETTLEMENT AGREEMENT, the settlement proposals exchanged by the PARTIES, or any motions filed or Orders entered pursuant to the SETTLEMENT AGREEMENT, may be construed or deemed as an admission by DEFEDANTS or any RELEASED PERSONS of any liability, culpability, negligence, or wrongdoing, including, but not limited to, that any member of the SETTLEMENT CLASS was not paid overtime wages and/or bonuses, and the SETTLEMENT AGREEMENT, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the SETTLEMENT AGREEMENT. Furthermore, neither the SETTLEMENT AGREEMENT, any motions filed, information and/or documents exchanged by the PARTIES during negotiations, settlement proposals exchanged by the PARTIES, nor Orders entered pursuant to the SETTLEMENT AGREEMENT, shall constitute an admission, finding, or evidence that any requirement for representative litigation or class certification has or could have been satisfied in this LITIGATION or any other action, except for the limited settlement purposes set forth in this

SETTLEMENT AGREEMENT.

I.      This SETTLEMENT AGREEMENT shall automatically terminate, and any certification of the SETTLEMENT CLASS for settlement purposes shall automatically be cancelled if this SETTLEMENT AGREEMENT is terminated pursuant to Section XVII, entitled "Termination of the Settlement Agreement," in which event this SETTLEMENT AGREEMENT shall not be offered, received, or construed as an admission of any kind concerning whether any class or collective is certifiable or any other matter.

J.      The PARTIES shall request the COURT approve, administer, and implement the SETTLEMENT AGREEMENT with respect to those actions and claims settled in this SETTLEMENT AGREEMENT.

## II.    MAXIMUM GROSS SETTLEMENT AMOUNT

A.      PLAINTIFFS and DEFENDANTS have agreed to a total settlement amount of Two Hundred Thousand Dollars ($200,000).  This total amount includes all INDIVIDUAL CLAIM PAYMENTS (equal to $141,200) plus the MAXIMUM GROSS SETTLEMENT AMOUNT equal to Fifty-Eight Thousand Eight Hundred Dollars ($58,800), inclusive of: all CLASS SETTLEMENT PAYMENTS; and CLASS COUNSEL'S FEES, COSTS AND EXPENSES. In addition to the INDIVIDUAL CLAIM PAYMENTS and MAXIMUM GROSS SETTLEMENT AMOUNT, DEFENDANTS shall also pay the EMPLOYERS' SHARE OF PAYROLL TAXES and SETTLEMENT EXPENSES.

B.      With the exception of the EMPLOYERS' SHARE OF PAYROLL TAXES and SETTLEMENT EXPENSES, in no event shall the total distribution and payments made by DEFENDANTS exceed $200,000. DEFENDANTS may not be called upon or required to

contribute additional monies above $200,000 (except for the EMPLOYERS' SHARE OF PAYROLL TAXES and SETTLEMENT EXPENSES) under any circumstances.

C.    With the exception of DEFENDANTS' payment of the EMPLOYERS' SHARE OF PAYROLL TAXES, members of the FINAL SETTLEMENT CLASS, or (where appropriate) CLASS COUNSEL, will be responsible for their own tax obligations associated with all distribution and payments made pursuant to this AGREEMENT. Each member of the FINAL SETTLEMENT CLASS will be responsible for remitting to State and/or Federal taxing authorities any applicable taxes due and shall hold DEFENDANTS harmless and indemnify RELEASED PERSONS for any liabilities, costs and expenses, including attorneys' fees, assessed or caused by any such taxing authority which result from the failure of that member of the FINAL SETTLEMENT CLASS to remit taxes due on payments made to the member of the FINAL SETTLEMENT CLASS pursuant to the SETTLEMENT AGREEMENT provided that, within ten (10) business days of DEFENDANTS' receipt of notice of any such failure to remit taxes due, DEFENDANTS provide CLASS COUNSEL with a copy of such notice.

D.    The MAXIMUM GROSS SETTLEMENT AMOUNT shall not be segregated and will remain in DEFENDANTS' general funds until provided to the CLAIMS ADMINISTRATOR for distribution, as set forth below.

E.    Any amounts that are not distributed to the members of the FINAL SETTLEMENT CLASS as CLASS SETTLEMENT PAYMENTS shall revert to DEFENDANTS.

## III.    PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT

A.    On or before November 7, 2025, after the SETTLEMENT AGREEMENT is executed by PLAINTIFFS (on behalf of themselves and all members of the SETTLEMENT CLASS), DEFENDANTS, and counsel for the PARTIES, the PLAINTIFFS shall submit this SETTLEMENT AGREEMENT (including all exhibits referenced herein) to the COURT and move the COURT, without opposition from DEFENDANTS, for a PRELIMINARY APPROVAL ORDER in the form set forth in Exhibit B. DEFENDANTS shall have the right to review and approve PLAINITFFS' motion for preliminary approval and all supporting papers before their submission to the Court by PLAINTIFFS and shall not unreasonably withhold such approval. The November 7, 2025 deadline set forth above in this paragraph may be extended by mutual agreement of the PARTIES.

B.    Except to the extent provided below with respect to the termination of this SETTLEMENT AGREEMENT, the PARTIES agree to take reasonable steps necessary to secure a PRELIMINARY APPROVAL ORDER from the COURT.

## IV.    DATA EXCHANGE

A.    Within thirty (30) calendar days after the execution of the SETTLEMENT AGREEMENT, DEFENDANTS shall provide the names, last known addresses and phone numbers, identification numbers, and Social Security numbers for each member of the SETTLEMENT CLASS to the CLAIMS ADMINISTRATOR. The CLAIMS ADMINISTRATOR shall provide CLASS COUNSEL with the names and addresses of each member of the FINAL SETTLEMENT CLASS once the time period to opt out of the SETTLEMENT CLASS has expired. CLASS COUNSEL shall not be provided the Social

Security number for any member of the FINAL SETTLEMENT CLASS. Also, within thirty

(30) calendar days after the execution of the SETTLEMENT AGREEMENT, CLASS

COUNSEL shall provide the CLAIMS ADMINISTRATOR with a list containing the

following information for PLAINTIFFS: name, last known address and telephone number,

Social Security number (if known) and identification number (if known).

## V.    CALCULATION OF POTENTIAL CLASS SETTLEMENT PAYMENTS

A.    CLASS COUNSEL has calculated the potential CLASS SETTLEMENT

PAYMENTS (Exhibit C) for each member of the SETTLEMENT CLASS using a uniform

methodology and provided its calculations to counsel for DEFENDANTS. DEFENDANTS

have reviewed and approved the allocations and underlying methodology. The sum of all

potential CLASS SETTLEMENT PAYMENTS calculated by CLASS COUNSEL is equal to

the REVISED GROSS SETTLEMENT AMOUNT. DEFENDANTS' funding obligations

under Section IX.A below shall not include amounts allocated to OPT-OUTs, and any funds

distributed to a member of the FINAL SETTLEMENT CLASS that are unclaimed because the

settlement check is not timely negotiated or otherwise shall revert to DEFENDANTS thirty

(30) calendar days from the date on which the settlement check has expired.

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY

A.    The PARTIES agree that PLAINTIFFS shall request, without opposition from

DEFENDANTS, that the COURT certify, solely for purposes of settlement, the

SETTLEMENT CLASS pursuant to Rule 23 of the Federal Rules of Civil Procedure. The

SETTLEMENT CLASS to be certified for settlement purposes only shall be defined as "all

individuals employed by Old Southwest Health and Rehabilitation, LLC in the following

positions any time between December 1, 2023 and April 26, 2025 who received a sign-on and/or retention bonus and who do not exclude themselves from the class: CNA, LPN, LPN Supervisor, MDS LPN, MDS RN, RN, RN Supervisor, Unit Manager LPN, Wound Care LPN, or Wound Nurse LPN." DEFENDANTS shall have the right to review and approve PLAINITFFS' request and all supporting papers prior to submission to the COURT by PLAINTIFFS and shall not unreasonably withhold such approval.

B.     In agreeing to certification of PLAINTIFFS' claims as a class action pursuant to Federal Rule of Civil Procedure 23 for the sole purpose of settlement of the Action consistent with this SETTLEMENT AGREEMENT, Defendant do not concede that claims pursuant to the Virginia Wage Payment Act, Va. Code § 40.1-29, or Virginia Overtime Wage Act, Va. Code § 40.1-29.2, may be brought as Rule 23 class action, as opposed to collective action pursuant to 29 U.S.C. § 216(b), and PLAINTIFFS' request that the COURT certify the SETTLEMENT CLASS pursuant to Rule 23 solely for purposes of settlements shall acknowledge this fact. DEFENDANTS do not waive, and instead expressly reserve their rights to challenge the propriety of collective action certification and/or class action certification for any purpose as if this SETTLEMENT AGREEMENT had not been entered into by the PARTIES should the COURT not approve the PARTIES' settlement in the same form reflected in this SETTLEMENT AGREEMENT or should counsel for a PARTY exercise their rights to terminate the SETTLEMENT AGREEMENT pursuant to Section XVI, *infra*.

C.     The SETTLEMENT AGREEMENT is contingent upon the COURT granting final approval to the PARTIES' settlement in the same form reflected in SETTLEMENT AGREEMENT and certifying the SETTLEMENT CLASS solely for purposes of that same

settlement.

## VII.    NOTICE TO MEMBERS OF SETTLEMENT CLASS

A.    Seven (7) calendar days after the occurrence of all the following: (1) the COURT has issued the PRELIMINARY APPROVAL ORDER;  (2) the CLAIMS ADMINISTRATOR has finalized the potential CLASS SETTLEMENT PAYMENT amounts for each member of the SETTLEMENT CLASS; and (3) the CLAIMS ADMINISTRATOR has received the information from DEFENDANTS described in Section IV.A, the CLAIMS ADMINISTRATOR shall mail the COURT-approved SETTLEMENT NOTICE to each member of the SETTLEMENT CLASS. Prior to mailing the SETTLEMENT NOTICE, the CLAIMS ADMINISTRATOR shall attempt to confirm the accuracy and, if necessary, update the addresses of the members of the SETTLEMENT CLASS through the United States Post Office's National Change of Address ("NCOA") database. All mailings by the CLAIMS ADMINISTRATOR shall be by first-class U.S. mail. If a SETTLEMENT NOTICE is returned as undeliverable, the CLAIMS ADMINISTRATOR will perform one computerized "skip trace" to identify an updated address and resend by first-class U.S. mail the COURT-approved SETTLEMENT NOTICE once to those members of the SETTLEMENT CLASS for whom it obtains an updated address.

B.    The CLAIMS ADMINISTRATOR, CLASS COUNSEL, PLAINTIFFS and any member of the SETTLEMENT CLASS shall not provide information regarding the settlement of this LITIGATION, including but not limited to, the terms of the SETTLEMENT AGREEMENT, the PRELIMINARY APPROVAL ORDER, the FINAL APPROVAL ORDER, or the SETTLEMENT NOTICE, to any third-party engaged in the business of

providing public information about class action lawsuits or settlements including, but not limited to, topclassactions.com, classaction.com, classaction.org, consumer-action.org, or hustlermoneyblog.com, or link any document related to the settlement of this LITIGATION to any such online information source. The SETTLEMENT NOTICE shall inform SETTLEMENT CLASS members of this prohibition.

C.    The CLAIMS ADMINISTRATOR shall re-mail the COURT-approved SETTLEMENT NOTICE to any member of the SETTLEMENT CLASS who contacts the CLAIMS ADMINISTRATOR during the time period between the initial mailing of the SETTLEMENT NOTICE and the BAR DATE, represents to the CLAIMS ADMINISTRATOR that they did not receive the initial mailing of the SETTLEMENT NOTICE or misplaced the SETTLEMENT NOTICE, and requests that a SETTLEMENT NOTICE be re-mailed.

D.    As soon as practicable following the BAR DATE, but before the date of the FINAL APPROVAL HEARING, the CLAIMS ADMINISTRATOR shall provide CLASS COUNSEL and DEFENDANTS' counsel with a declaration of due diligence and proof of mailing with regard to the mailing of the SETTLEMENT NOTICE. CLASS COUNSEL shall bear the responsibility of filing this declaration with the COURT prior to the date of the FINAL APPROVAL HEARING.

## VIII.   FINAL APPROVAL

A.    The date of the FINAL APPROVAL HEARING shall be set by the COURT but in no event shall be scheduled earlier than one-hundred (100) calendar days after the motion for preliminary approval is filed, in order to ensure that the FINAL APPROVAL HEARING

is not set earlier than 90 days after the mailing of the CAFA NOTICE, and notice of such

hearing shall be provided to members of the SETTLEMENT CLASS in the SETTLEMENT

NOTICE, although such hearing may be continued by the COURT without further notice to

members of the SETTLEMENT CLASS, other than those who are OBJECTORS.

      B.     PLAINTIFFS, without opposition from DEFENDANTS, shall submit a draft

FINAL APPROVAL ORDER, and a draft order of FINAL JUDGMENT setting forth the terms

of this SETTLEMENT AGREEMENT, by incorporation or otherwise, for execution and entry

by the COURT at the time of the FINAL APPROVAL HEARING or at such other time as the

COURT deems appropriate. DEFENDANTS shall have the right to review and approve the

draft FINAL APPROVAL ORDER and draft order of FINAL JUDGMENT prior to

submission by PLAINTIFFS and shall not unreasonably withhold such approval.

## IX.    DISTRIBUTION OF SETTLEMENT FUNDS

      A.     Within ten (10) calendar days (provided that this deadline shall not fall on a

weekend or holiday) after the FINAL EFFECTIVE DATE, DEFENDANTS shall provide the

CLAIMS ADMINISTRATOR with funds equal to the MAXIMUM GROSS SETTLEMENT

AMOUNT (minus amounts associated with any OPT-OUTs), which shall be deposited in an

interest-bearing Qualified Settlement Fund established by the CLAIMS ADMINISTRATOR.

      B.     Within fourteen (14) calendar days after the Qualified Settlement Fund is

funded, the CLAIMS ADMINISTRATOR shall mail CLASS SETTLEMENT PAYMENTS

to members of the FINAL SETTLEMENT CLASS by first-class U.S. mail, along with a copy

of the FINAL APPROVAL ORDER. The CLAIMS ADMINISTRATOR shall mail the

CLASS SETTLEMENT PAYMENTS to the same address to which the SETTLEMENT

NOTICE was mailed or, to the extent that a member of the SETTLEMENT CLASS provided an updated address to the CLAIMS ADMINISTRATOR, to the updated address provided; however, if the SETTLEMENT NOTICE to any member of the SETTLEMENT CLASS was returned as undeliverable, before mailing the CLASS SETTLEMENT PAYMENTS to the same undeliverable address, the CLAIMS ADMINISTRATOR shall search for an updated address through the NCOA.

C.     To the extent that any appeal of the COURT'S FINAL APPROVAL ORDER is filed, the CLAIMS ADMINISTRATOR shall not disburse any funds from the Qualified Settlement Fund until after the appeal is resolved and the COURT'S FINAL APPROVAL ORDER is affirmed.

D.     Consistent with the collective-action mechanism set forth in 29 U.S.C. § 216(b), which is incorporated into the Virginia Wage Payment Act and Virginia Overtime Wage Act (*see* Va. Code 40.1-29(J) & Va. Code 40.1-29.2, respectively), by endorsing or negotiating checks providing CLASS SETTLEMENT PAYMENTS, FINAL SETTLEMENT CLASS members will consent in writing to participate in this Action as party plaintiffs.

E.     Pursuant to Section II.E, any funds distributed to a member of the FINAL SETTLEMENT CLASS that are unclaimed because the settlement check is not timely negotiated or otherwise shall revert to DEFENDANTS thirty (30) calendar days from the date on which the settlement check has expired.

F.     If a settlement check is returned to the CLAIMS ADMINISTRATOR with a forwarding address, the settlement check shall be re-mailed by the CLAIMS ADMINISTRATOR within three (3) business days following receipt of the returned mail to

the address indicated. If a settlement check is returned to the CLAIMS ADMINISTRATOR without a forwarding address, the CLAIMS ADMINISTRATOR shall perform one skip trace to search for the correct address, and shall promptly re-mail the settlement check to any newly found address(es).

G.    The PARTIES agree that any CLASS SETTLEMENT PAYMENT to be issued to each member of the FINAL SETTLEMENT CLASS shall be separated into two equal amounts: fifty percent (50%) shall be allocated to the RELEASED CLAIMS for unpaid overtime and other wage-related damages, and the remaining fifty percent (50%) shall be allocated to the RELEASED CLAIMS for liquidated damages related to the same claims. Each CLASS SETTLEMENT PAYMENT shall be subject to all required individual-paid payroll taxes and deductions (*e.g.*, federal income taxes, state income taxes, individual's share of FICA taxes, and other state-specific statutory deductions) and other authorized or required deductions (*e.g.*, garnishments, tax liens, child support). The portion allocated to liquidated damages shall be characterized as non-wage income to the recipient. The CLAIMS ADMINISTRATOR will report the wage portion to each member of the FINAL SETTLEMENT CLASS on an IRS Form W-2, and the non-wage portion on an IRS Form 1099-MISC.

H.    The CLAIMS ADMINISTRATOR shall be responsible for issuing the CLASS SETTLEMENT PAYMENTS, less required withholdings and deductions, to each member of the FINAL SETTLEMENT CLASS and mailing the CLASS SETTLEMENT PAYMENTS, IRS Form W-2s and IRS FORM 1099-MISC to each member of the FINAL SETTLEMENT CLASS and CLASS COUNSEL as applicable.

I.      Each member of the FINAL SETTLEMENT CLASS will have one hundred

eighty (180) calendar days from the date on which the CLASS SETTLEMENT PAYMENTS

are mailed to negotiate his or her settlement check(s) and thereby consent to participate in

the Action as a party plaintiff and be bound by the RELEASED OPT-IN CLAIMS set forth

in Section XII.B, *infra*. If any settlement check is not negotiated in that period of time, that

settlement check will be voided, and a stop-payment will be placed on the settlement check.

Any individual CLASS SETTLEMENT PAYMENTS or portions thereof which remain

unclaimed for any reason one hundred eighty (180) calendar days following the mailing of

the CLASS SETTLEMENT PAYMENT shall be deemed unclaimed. In such event, one

hundred percent (100%) of such net unclaimed funds of those members of the FINAL

SETTLEMENT CLASS shall revert to DEFENDANTS thirty (30) calendar days from the

date on which the settlement checks expired, but the SETTLEMENT AGREEMENT and

release of claims contained herein nevertheless will be binding upon the member of the

FINAL SETTLEMENT CLASS. Neither DEFENDANTS, counsel for DEFENDANTS,

CLASS COUNSEL, PLAINTIFFS, nor the CLAIMS ADMINISTRATOR shall have any

liability for lost or stolen settlement checks, for forged signatures on settlement checks, or

for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the

event a member of the FINAL SETTLEMENT CLASS notifies the CLAIMS

ADMINISTRATOR that he or she believes that a settlement check has been lost or stolen,

the CLAIMS ADMINISTRATOR shall immediately place a stop payment on such check. If

the settlement check in question has not been negotiated prior to the stop payment order and

one hundred eighty (180) calendar days has not passed since the mailing of the settlement

check, the CLAIMS ADMINISTRATOR will issue a replacement check, from which the fees associated with any stop payment order will first be deducted.

X.    **CLASS COUNSEL'S FEES, COSTS, AND EXPENSES**

A.    CLASS COUNSEL may make an application to the COURT for an award of attorneys' fees, expenses or costs (not including SETTLEMENT EXPENSES) up to an amount not to exceed $21,523.83 (approximately 36.6% of the MAXIMUM GROSS SETTLEMENT AMOUNT). Such application shall be filed in connection with both PRELIMINARY APPROVAL and FINAL APPROVAL of the SETTLEMENT AGREEMENT. DEFENDANTS agree that they will not oppose CLASS COUNSEL's application as set forth above.

B.    If the COURT rules that any amount requested by CLASS COUNSEL for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount will be deemed to be CLASS COUNSEL'S FEES, COSTS AND EXPENSES for purposes of this SETTLEMENT AGREEMENT. Any reduction by the COURT will become part of the REVISED GROSS SETTLEMENT AMOUNT.

C.    This SETTLEMENT AGREEMENT is not conditioned on the COURT'S approval of CLASS COUNSEL's application for fees, costs and expenses.

D.    Payment of CLASS COUNSEL'S FEES, COSTS AND EXPENSES to CLASS COUNSEL in the amount approved by the COURT, along with 40% contingency on the INDIVIDUAL CLAIM PAYMENTS discussed in Section XI, *infra*, shall constitute full satisfaction of any and all obligations by RELEASED PERSONS to pay any person, attorney, or law firm (including but not limited to CLASS COUNSEL) for attorneys' fees, expenses, or

costs (including but not limited to any fees, costs, and expenses related to experts and consultants, if any) incurred on behalf of PLAINTIFFS and all members of the SETTLEMENT CLASS in connection with the RELEASED CLAIMS, RELEASED OPT-IN CLAIMS, and claims covered by the GENERAL RELEASE, and shall relieve the RELEASED PERSONS of any other claims or liability to any person for any attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to experts and consultants) to which any person may claim to be entitled on behalf of any PLAINTIFF or member of the SETTLEMENT CLASS for this LITIGATION. Upon payment of CLASS COUNSEL'S FEES, COSTS AND EXPENSES hereunder, and the 40% contingency on the INDIVIDUAL CLAIM PAYMENTS discussed in Section XI, *infra*, CLASS COUNSEL, PLAINTIFFS, and members of the FINAL SETTLEMENT CLASS shall release RELEASED PERSONS from any and all claims for attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) relating to the RELEASED CLAIMS, RELEASE OPT-IN CLAIMS, and claims included within the GENERAL RELEASE. CLASS COUNSEL further represent and certify that they are not aware of any liens for attorneys' fees, expenses, or costs existing, filed, or asserted with respect to any of the claims asserted in this LITIGATION.

E.      CLASS COUNSEL shall be paid CLASS COUNSEL'S FEES, COSTS AND EXPENSES in the amount approved by the COURT by the CLAIMS ADMINISTRATOR via electronic means. Prior to any payment of CLASS COUNSEL'S FEES, COSTS AND EXPENSES as approved by the COURT, CLASS COUNSEL shall provide the CLAIMS ADMINISTRATOR with consistent written instructions as well as all information necessary

to effectuate such payments (*e.g.*, executed IRS Forms W-9). The CLAIMS ADMINISTRATOR will issue a respective IRS Form 1099-MISC to CLASS COUNSEL for the award of CLASS COUNSEL'S FEES, COSTS AND EXPENSES.

    F.    Within twenty (20) business days after the Qualified Settlement Fund is funded, the CLAIMS ADMINISTRATOR shall pay CLASS COUNSEL'S FEES, COSTS, AND EXPENSES approved by the COURT via electronic means if the conditions above have been satisfied.

## XI.    INDIVIDUAL CLAIM PAYMENTS

    A.    In addition to the MAXIMUM GROSS SETTLEMENT AMOUNT, DEFENDANTS shall make payments to each PLAINTIFF representing individual claims raised by PLAINTIFFS in the COMPLAINT ("INDIVIDUAL CLAIM PAYMENTS"). The total amounts of INDIVIDUAL CLAIM PAYMENTS allocated to each PLAINTIFF are as follows: $34,000 to Kraeema Johnson; $21,550 to Ketitia Stanley; $16,500 to Jessica Davis; $15,650 to Latrivia Harris; $38,500 to Sheree Payne; and $15,000 to Kristian Stevens. PLAINTIFFS have agreed to pay PLAINTIFFS' COUNSEL a 40% contingency of these amounts, with the remaining 60% divided equally as W-2 wages and 1099 payments. The final allocation of this method results in the following payments being made by DEFENDANTS:

    1)  Kraeema Johnson: $10,200 as W-2, $10,200 as 1099;

    2)  Ketitia Stanley: $6,465 as W-2, $6,465 as 1099;

    3)  Jessica Davis: $4,950 as W-2, $4,950 as 1099;

    4)  Latrivia Harris: $4,695 as W-2, $4,695 as 1099;

5)  Sheree Payne: $11,550 as W-2, $11,550 as 1099;

6)  Kristian Stevens: $4,500 as W-2, $4,500 as 1099; and

7)  Yugo Collins, PLLC: $56,480 as 1099.

B.      Each INDIVIDUAL CLAIM PAYMENT shall be subject to all required individual-paid payroll taxes and deductions (*e.g.*, federal income taxes, state income taxes, individual's share of FICA taxes, and other state-specific statutory deductions) and other authorized or required deductions (*e.g.*, garnishments, tax liens, child support). The portion allocated to non-wage damages shall be characterized as non-wage income to the recipient. DEFENDANTS will report the wage portion to each PLAINTIFF on an IRS Form W-2, and the non-wage portion on an IRS Form 1099-MISC.  DEFENDANTS will pay the employers' share of all payroll taxes on all payments designated as W-2 wages.

C.      DEFENDANTS shall mail INDIVIDUAL CLAIM PAYMENTS approved by the COURT within fourteen (14) calendar days after the Court issues the PRELIMINARY APPROVAL ORDER.  Those checks will be mailed to Yugo Collins, PLLC at: 25 Franklin Rd. SW, Roanoke, VA 24011 or such other address as Yugo Collins, PLLC shall provide to receive those checks.

## XII.    RELEASE OF CLAIMS; WAIVER; ASSIGNMENT OF RIGHTS

A.      <u>Release of Non-FLSA Wage and Hour Claims.</u> Effective as of the FINAL EFFECTIVE DATE, PLAINTIFFS and all RELEASING PERSONS hereby forever release and discharge RELEASED PERSONS from all **wage and hour** causes of actions, claims, demands, damages, liquidated damages, compensatory damages, punitive damages, penalties, attorneys' fees, costs, interest, and any other relief permitted to be recovered on, related to, or

in any way growing out of any claims in the LITIGATION, or any other wage and hour claims that could have been asserted in the LITIGATION or otherwise raised by the PLAINTIFFS or any of the RELEASING PERSONS, whether known or unknown, contingent or non-contingent, including but not limited to claims under the Virginia Overtime Wage Act (Va. Code § 40.1-29.2) ("VOWA"), the Virginia Wage Payment Act, Va. Code § 40.1-29, ("VWPA"), or any under any other federal, state, or local wage and hour or wage payment law, regulation, ordinance, executive order, as well as any wage and hour claim arising under common law or public policy, including but not limited to any claim related to hours worked, the payment of remuneration or wages, compensation for work performed or services rendered, amounts due under any contract, implied contract, or quasi-contract, money had and received in assumpsit, quantum meruit/unjust enrichment, overtime, minimum wages, wage statements, business expenses, deductions from pay, earned but unused vacation or paid time off, payments associated with rest breaks or meal periods, incentive or bonus compensation paid or allegedly owed, alleged retaliation for complaining about or raising wage and hour issues, and/or claims for derivative benefits (both ERISA and non-ERISA benefits, including 401(k) benefits or matching benefits, retirement benefits, and deferred compensation benefits) related to alleged failure to pay wages owed, arising out of or related to events that occurred or are alleged to have occurred at any time up to and including the date the COURT enters the PRELIMINARY APPROVAL ORDER, but with respect to the RELEASING PERSONS, excluding claims under the FLSA, 29 U.S.C. § 201, *et seq.*, ("RELEASED CLAIMS"). The RELEASING PERSONS do not release any RELEASED PERSONS from any claims that are unrelated to

wage and hour claims.

B.      Release of Claims under the Fair Labor Standards Act. In addition to the release

of claims set forth in the preceding Section XII.A, by negotiating the check associated with

their CLASS SETTLEMENT PAYMENT, each RELEASING PERSON shall acknowledge

their previous agreement to release, and all RELEASING PERSONS shall thereby forever

release and discharge, the RELEASED PERSONS from any and all claims under the FLSA,

29 U.S.C. § 201, *et seq.*, arising out of or related to events that occurred or are alleged to have

occurred at any time up to and including the date the COURT enters the PRELIMINARY

APPROVAL ORDER and shall further acknowledge or, to the extent not already released by

their failure to timely OPT OUT, shall release and discharge any and all claims arising under

the VOWA and VWPA arising out of or related to events that occurred or are alleged to have

occurred at any time up to and including the date the COURT enters the PRELIMINARY

APPROVAL ORDER ("RELEASED OPT-IN CLAIMS"). To that end, the back of each check

shall include the following statement above or below the endorsement line: "By negotiating

this check, I consent to participate as a party plaintiff in *Kraeema Johnson, et al. v. Old*

*Southwest Health and Rehabilitation, LLC, et al.*, No. 7:24-cv-00574-MFU-CKM (W.D. Va.)

and acknowledge and confirm that I am bound by the Settlement Agreement in that Action,

including its release of claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*,

the Virginia Overtime Wage Act, Va. Code § 40.1-29.2, and the Virginia Wage Payment Act,

Va. Code § 40.1-29."

C.      Further Release by Plaintiffs Kraeema Johnson, Ketitia Stanley, Jessica Davis,

Latrivia Harris, Sheree Payne, and Kristian Stevens. In addition to the RELEASED CLAIMS

and RELEASED OPT-IN CLAIMS identified in Section XII.A and B, respectively, effective

as of the FINAL EFFECTIVE DATE, PLAINTIFFS, for themselves and their respective

agents, attorneys, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees,

conservators, guardians, estates, personal representatives, exclusive bargaining agents,

successors-in-interest, and assigns, voluntarily and with the advice of CLASS COUNSEL,

fully and forever release, acquit, and discharge the DEFENDANTS and all RELEASED

PERSONS, in their personal individual, official and/or corporate capacities, from any and all

claims, causes of action, suits, debts, dues, sums of money, contracts, warranties, covenants,

demands, costs, loss of services, expenses, attorney's fees, and compensation for any and all

known and unknown damages and injuries, which they may now have or claim to have against

DEFENDANTS or RELEASED PERSON, directly or indirectly arising out of or in any way

connected with their relationships with DEFENDANTS or any of the RELEASED PERSONS

that occurred at any time up to and including the date the COURT enters the PRELIMINARY

APPROVAL ORDER ("GENERAL RELEASE").

The foregoing release by PLAINTIFFS specifically includes, but is not limited to,

(a.) any and all claims and causes of action pursuant to any federal, state or local law, statute,

regulation, or ordinance including, but not limited to, the Fair Labor Standards Act (29 U.S.C.

§ 201, et seq.), the Virginia Overtime Wage Act (Va. Code § 40.1-29.2), the Virginia Wage

Payment Act (Va. Code § 40.1-29), Title VII of the Civil Rights Act of 1964, as amended (42

U.S.C. § 2000e, *et seq.*), the Americans with Disabilities Act of 1990, as amended (42 U.S.C. §

12101, *et seq.*), the Family and Medical Leave Act (29 U.S.C. § 2601, *et seq.*), the National

Labor Relations Act (29 U.S.C. § 151, *et seq.*), the Labor-Management Relations Act of 1947

(29 U.S.C. § 141, *et seq.*); the Equal Pay Act (29 U.S.C. § 206), the Civil Rights Acts (42 U.S.C. § 1981 and § 1988), the Age Discrimination in Employment Act (29 U.S.C. § 621, *et seq.*), the Employee Retirement Income Security Act of 1974 (20 U.S.C. §1001, *et seq.*), the Occupational Safety and Health Act of 1970 ( 29 U.S.C. § 651, *et seq.*), the Virginia Human Rights Act (Va. Code § 2.2-3900, *et seq.*), and all other federal, state or local statutes, regulations, or ordinances; (b.) any and all claims and causes of action arising under the common law or public policy of the United States or any state including, but not limited to, claims for invasion of the right to privacy, wrongful discharge, retaliation, negligence, fraud, defamation, slander, emotional distress, intentional or negligent interference with contractual relations or prospective business advantage, outrageous conduct, conversion, or any other tort; (c.) any and all claims and causes of action for breach of contract (express or implied and written or oral), quantum meruit, and breach of duty of good faith and fair dealing; (d.) claims or causes of action for any costs and attorney's fees; and (e.) any other claims or causes of action in law or equity raised or that could have been raised by any PLAINTIFFS at any time up to and including the date the COURT enters the PRELIMINARY APPROVAL ORDER.

1.     **Time to Negotiate and Consider the RELEASED CLAIMS For PLAINTIFFS Who Are 40 Years of Age or Older.** PLAINTIFFS who are 40 years of age or older are advised to consult with an attorney before signing this SETTLEMENT AGREEMENT. By their signature below, each PLAINTIFF who is 40 years of age or older acknowledges that he or she has carefully read this AGREEMENT and the GENERAL RELEASE contained herein and finds that it has been written in language that he or she understands. Each PLAINTIFF who is 40 years of age or older has been given twenty-one (21)

calendar days to consider whether to accept the release of claims presented in the GENERAL RELEASE contained herein at Section XII.C, and has signed it only after reading, considering and understanding it. If any PLAINTIFF who is 40 years of age or older signs this SETTLEMENT AGREEMENT before the expiration of that 21-day period, he or she is expressly waiving his or her right to consider the GENERAL RELEASE contained herein at Section XII.C for any remaining portion of that 21-day period. The PARTIES agree that any changes made to the GENERAL RELEASE contained herein at Section XII.C from the version originally presented to PLAINTIFFS who are 40 years of age or older, whether those changes are deemed material or nonmaterial, do not extend the 21-day period each PLAINTIFF who is 40 years of age or older has been given to consider the GENERAL RELEASE contained herein at Section XII.C.

      2.    **Waiver of Age Discrimination/Retaliation Claims and Revocation For PLAINTIFFS Who Are 40 Years of Age or Older.** As to the waiver of any and all potential age discrimination and/or retaliation claims under the Age Discrimination in Employment Act ("ADEA"), each PLAINTIFF who is 40 years of age or older further understands and acknowledges that he or she has seven (7) calendar days following the execution of this SETTLEMENT AGREEMENT to revoke the portions of the GENERAL RELEASE contained herein at Section XII.C that waives potential age discrimination and/or retaliation claims under the ADEA. Each PLAINTIFF who is 40 years of age or older acknowledges that the portion of the GENERAL RELEASE contained herein at Section XII.C that waives such potential age discrimination and/or retaliation claims shall not become

effective or enforceable until the revocation period has expired and he or she has not exercised his or her right to revoke.

Each PLAINTIFF who is 40 years of age or older further understands that in order to revoke the waiver of age discrimination and/or retaliation claims under the ADEA contained in the GENERAL RELEASE in Section XII.C, he or his attorney or she or her attorney must deliver a written and signed statement of revocation to Michael S. McIntosh, Esq., Littler Mendelson, P.C., 1800 Tysons Boulevard, Suite 500, McLean, VA 22102; or (b) fax the revocation to Michael S. McIntosh at (703) 991-8016 within seven (7) days following their execution of this SETTLEMENT AGREEMENT. In either case, a PLAINTIFF who is 40 years of age or older agrees to keep written documentation proving that he or she revoked the waiver of age discrimination and/or retaliation claims under the ADEA contained as part of the GENERAL RELEASE in Section XII.C as provided in this paragraph, either by keeping the documents signed by a representative of Littler Mendelson, P.C. attesting to the delivery of the revocation, or other verification that the fax was, in fact, received by Littler Mendelson, P.C. If such revocation of the release and waiver of potential age discrimination and/or retaliation claims occurs, the consideration for the INDIVIDUAL CLAIM PAYMENT will be reduced by fifty (50%) percent. The remaining provisions of the release and RELEASED CLAIMS, RELEASED OPT-IN CLAIMS, and GENERAL RELEASE in Sections XII.A, B, & C, respectively, will remain in full force and effect.

**Each PLAINTIFF who is 40 years of age or older understands that once he or she signs below, this SETTLEMENT AGREEMENT will become a legally enforceable**

**agreement under which he or she will be giving up rights and claims he or she may have, on the terms stated in this SETTLEMENT AGREEMENT.**

**Each PLAINTIFF who is 40 years of age or older has been given the opportunity to consult with an attorney prior to execution of this SETTLEMENT AGREEMENT. Each PLAINTIFF who is 40 years of age or older acknowledges that he or she has consulted with his or her attorneys and signs this SETTLEMENT AGREEMENT knowingly, freely and voluntarily**.

D.     PLAINTIFFS who are not currently engaged as employees by DEFENDANTS as of the date of their execution of this SETTLEMENT AGREEMENT permanently, unequivocally, and unconditionally waive any and all rights they may now have, may have had in the past, or may have in the future to seek, obtain or resume a relationship with DEFENDANTS and all RELEASED PERSONS as an employee, consultant, contingent worker, temporary worker, independent contractor, or in any other capacity whatsoever. PLAINTIFFS who are not currently engaged as employees or contractors by DEFENDANTS agree never to apply for, or to accept, employment and/or engagement as an independent contractor with DEFENDANTS or any RELEASED PERSONS. PLAINTIFFS who are not currently engaged as employees or contractors by DEFENDANTS further agree that this SETTLEMENT AGREEMENT shall be the basis for DEFENDANTS and all RELEASED PERSONS not to hire, rehire or retain any of them as an employee, consultant, contingent worker, independent contractor or in any other capacity, whatsoever, after their execution of this SETTLEMENT AGREEMENT. In the event that PLAINTIFFS who are not currently engaged as employees by DEFENDANTS as of the date they execute this SETTLEMENT

AGREEMENT are ever mistakenly employed or retained by one of DEFENDANTS or any RELEASED PERSONS, those PLAINTIFFS agree to have their employment and/or contract terminated with no resulting claim or cause of action against the DEFENDANTS or any RELEASED PERSONS. PLAINTIFFS who are not currently engaged as employees or contractors by DEFENDANTS acknowledge and agree that they have no right to employment, re-employment, or engagement as a contractor with DEFENDANTS or any RELEASED PERSONS, and that DEFENDANTS or any RELEASED PERSONS may legally refuse to employ and/or engage as an employee him/her. This paragraph shall not apply in the event that after the execution of the SETTLEMENT AGREEMENT, DEFENDANTS or any RELEASED PERSONS purchase, merge with, or assume control over any entity that at the time of the purchase, merger, or change in control employs a PLAINTIFF who is not currently engaged as an employee by DEFENDANTS.

     E.     PLAINTIFFS and RELEASING PERSONS further covenant and agree that, since they are settling disputed claims, they will not accept, recover or receive any back pay, liquidated damages, other damages or any other form of relief based on any RELEASED CLAIMS and, as applicable, any RELEASED OPT-IN CLAIMS or claims covered by the GENERAL RELEASE, which may arise out of, or in connection with any other individual, union, representative, class, collective, administrative, or arbitral proceeding pursued by any individual, class/collective, union, or federal, state or local governmental agency against DEFENDANTS and/or RELEASED PERSONS. PLAINTIFFS and RELEASING PERSONS further acknowledge that they are enjoined from pursuing any RELEASED CLAIMS and, as applicable, any RELEASED OPT-IN CLAIMS or claims covered by the GENERAL

RELEASE, which they have, had, might have or might have had against DEFENDANTS and/or RELEASED PERSONS based on any act or omission that occurred up to and including the date the COURT enters the PRELIMINARY APPROVAL ORDER.

F.    CLASS COUNSEL and PLAINTIFFS represent and warrant that nothing which would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the LITIGATION, or any related action. Upon the FINAL EFFECTIVE DATE of this SETTLEMENT AGREEMENT, members of the FINAL SETTLEMENT CLASS shall be deemed to have given this warranty.

## XIII.  MEDIA AND CONFIDENTIALITY OBLIGATIONS

A.    PLAINTIFFS, CLASS COUNSEL, DEFENDANTS, and DEFENDANTS' counsel shall not before or during the period between the mailing of the SETTLEMENT NOTICE and the BAR DATE: (1) initiate contact or attempt to contact or solicit, directly or indirectly, any members of the SETTLEMENT CLASS who are not PLAINTIFFS; (2) issue a press release or otherwise notify the media about the terms of the SETTLEMENT AGREEMENT; or (3) advertise or make any public statements regarding any SETTLEMENT AGREEMENT terms through oral, written, recorded or electronic communications. Notwithstanding the foregoing, DEFENDANTS and their counsel shall not be precluded from making any disclosures required by law. Further, nothing in this SETTLEMENT AGREEMENT shall be construed to prevent DEFENDANTS from communicating with their employees and/or independent contractors or responding to inquiries from their employees

and/or independent contractors regarding any matter. If any member of the SETTLEMENT CLASS inquiries about the LITIGATION or the settlement, however, DEFENDANTS shall refer the individual to the CLAIMS ADMINISTRATOR. Nothing herein shall prohibit CLASS COUNSEL from responding to settlement-related inquiries from any PLAINTIFFS or members of the SETTLEMENT CLASS who contact CLASS COUNSEL.

B.      To the extent that PLAINTIFF, CLASS COUNSEL, DEFENDANTS, or DEFENDANTS' counsel are contacted by the media about the settlement or SETTLEMENT AGREEMENT, **they shall only be permitted to respond to such inquiries by stating that the PARTIES have reached a settlement subject to COURT approval, and that the PARTIES believe they have reached a fair and reasonable settlement of the disputed claims.** None of the PLAINTIFFS or CLASS COUNSEL may disclose any of the specific terms of the SETTLEMENT AGREEMENT or any other document discussing or summarizing the terms of settlement to the media. CLASS COUNSEL may, however, disclose the specific terms of the SETTLEMENT AGREEMENT to the extent necessary to respond to inquiries from members of the SETTLEMENT CLASS regarding the proposed settlement and may disclose the terms of the SETTLEMENT AGREEMENT in seeking approval of the SETTLEMENT AGREEMENT with the COURT. CLASS COUNSEL may also use publicly available information about the settlement and SETTLEMENT AGREEMENT in their advertising and promotional materials. CLASS COUNSEL is, however, completely barred from using DEFENDANTS' logos and trademarks in such advertising and promotional materials.

C.      PLAINTIFFS agree to maintain the confidentiality of this SETTLEMENT

AGREEMENT and will not disclose in any fashion its existence, its nature and terms, and/or the substance or content of discussions involved in reaching this SETTLEMENT AGREEMENT except to CLASS COUNSEL, and their other lawyers, accountants, tax or financial planning professionals, insurers, or immediate family members (if any) without the prior written consent of an authorized representative(s) of all DEFENDANTS, except as necessary to prepare and file income tax forms, as necessary to initiate proceedings to enforce the terms of this SETTLEMENT AGREEMENT pursuant to Section XXVII, *infra*, or as required by court or arbitrator order after reasonable notice to the DEFENDANTS; and provided the PLAINTIFFS instruct the recipient(s) of the information (with the exception of a governmental agency or court), and such individuals agree not to disclose the terms of this SETTLEMENT AGREEMENT and to take reasonable efforts to maintain confidentiality.

D.    A "breach" of the Media and Confidentiality Obligations in Section XIII, *supra*, of the SETTLEMENT AGREEMENT is any disclosure by a PARTY of the terms or conditions of the SETTLEMENT AGREEMENT beyond those permitted by Section XIII. In the event of any such breach or threatened breach, the Parties agree that these Media and Confidentiality Obligations provisions may be specifically enforced in confidential arbitral proceedings pursuant to Section XVII, *infra*, and may be used as evidence in a subsequent arbitral proceeding alleging a breach of the SETTLEMENT AGREEMENT. The Parties agree that damages for an improper disclosure in violation of the Media and Confidentiality Obligations provisions would be and are difficult to ascertain and therefore render this matter appropriate for liquidated damages. Thus, to the extent either Party proves in arbitration that the other side breached this SETTLEMENT AGREEMENT's Media and Confidentiality

Obligations provisions, the breaching party agrees to pay the prevailing party $5,000 per violation, in addition to attorneys' fees, costs, and expenses incurred by the prevailing party to enforce the Agreement's Media and Confidentiality Obligations provisions. The Parties agree that this sum is reasonable in light of the circumstances existing at the time of the Agreement. The Parties further agree that such damages are not intended to be, and shall not be construed as, a penalty. This provision is not intended to preclude otherwise available recovery of attorneys' fees or cost specifically authorized under applicable law. In addition to any other remedies available to it, the Parties shall be entitled to seek in a court of competent jurisdiction a temporary restraining order and/or preliminary and/or permanent injunction, or other equivalent relief, restraining another Party from any actual or threatened breach of the SETTLEMENT AGREEMENT's Media and Confidentiality Obligations provisions.

## XIV.    NON-DISPARAGEMENT

PLAINTIFFS agree not to engage in any conduct or make or authorize any statement, including on social media, that would disparage any of the DEFENDANTS, or their services, or make to, or solicit for, the media or others, any comments, statements, and the like that may be considered to be derogatory or detrimental to the good name or business reputation of any of the DEFENDANTS or their current or former owners, managers, employees, and agents, except that PLAINTIFFS may testify truthfully in any legal proceeding where their testimony is compelled by subpoena under oath. PLAINTIFFS further agree not to encourage or incite other current or former employees of the DEFENDANTS to disparage or assert any complaint, claim or charge, or to initiate any legal proceeding, against the DEFENDANTS.

**XV.    BINDING EFFECT, EXCLUSION, OPT OUT, OBJECTION RIGHTS, AND
CONSENTING TO PARTICIPATION AS A PARTY PLAINTIFF**

A.    <u>Right of members of SETTLEMENT CLASS to OPT OUT</u>: Members of the

SETTLEMENT CLASS may opt out of that class by sending a Request for Exclusion to the

CLAIMS ADMINISTRATOR via U.S. Mail, expressing his/her desire to be excluded from

the FINAL SETTLEMENT CLASS, including his/her name (and former names, if any),

current address, telephone number, and Social Security number, and the dates of engagement

as employees. The Request for Exclusion must be signed by the individual who is electing to

opt out, and any such Request for Exclusion must be received by the CLAIMS

ADMINISTRATOR on or before the BAR DATE in order to be considered timely and to

exclude the SETTLEMENT CLASS member from the FINAL SETTLEMENT CLASS.

Requests for Exclusion that do not include all required information, or that are not received by

the CLAIMS ADMINISTRATOR during the OPT-OUT PERIOD, will be deemed null, void,

and ineffective. Members of the SETTLEMENT CLASS may not exclude themselves by filing

a Request for Exclusion as a group or class, but must in each instance individually and

personally execute a Request for Exclusion and timely return it to the CLAIMS

ADMINISTRATOR. Any member of the  SETTLEMENT CLASS who is an OPT-OUT shall

not:  (i) have any rights under this SETTLEMENT AGREEMENT; (ii) be entitled to receive a

CLASS SETTLEMENT PAYMENT; (iii) have a right to object to the SETTLEMENT

AGREEMENT; and (iv) be bound by this SETTLEMENT AGREEMENT, the FINAL

APPROVAL ORDER, or the FINAL JUDGMENT.

B.    <u>Right of members of SETTLEMENT CLASS to Object</u>: Any member of the

SETTLEMENT CLASS who does not opt out may object to this SETTLEMENT

AGREEMENT. Any such objections, however, must be received by the CLAIMS ADMINISTRATOR on or before the BAR DATE in order to be timely. Such objection shall include the name and address of the OBJECTOR, a detailed statement of the basis for each objection asserted, the grounds on which the OBJECTOR desires to appear and be heard (if any), and, if the OBJECTOR is represented by counsel, the name and address of counsel. If counsel is appearing on behalf of more than one OBJECTOR, counsel must identify each such OBJECTOR and each such OBJECTOR must individually comply with the requirements of this paragraph. No member of the SETTLEMENT CLASS may be heard at the FINAL APPROVAL HEARING who has not complied with this requirement, and any member of the SETTLEMENT CLASS who fails to comply with this requirement will be deemed to have waived any right to object and any objection to the SETTLEMENT AGREEMENT.

C.    <u>FINAL SETTLEMENT CLASS Members' Right to Counsel.</u> Any member of the SETTLEMENT CLASS who does not elect to be excluded from the SETTLEMENT AGREEMENT may, but need not, enter an appearance through his or her own attorney. Members of the SETTLEMENT CLASS who do not enter an appearance through their own attorneys will be represented by CLASS COUNSEL.

D.    <u>Reporting of OBJECTORS and OPT-OUTS.</u> No later than ten (10) calendar days before the date of the FINAL APPROVAL HEARING, the CLAIMS ADMINISTRATOR shall certify jointly to CLASS COUNSEL and DEFENDANTS' counsel: (1) a list of all members of the SETTLEMENT CLASS who filed a timely objection; (2) the percentage and list of all members of the SETTLEMENT CLASS (by employee identification number only) who timely and properly requested to opt out at any time during the OPT-OUT

PERIOD; and (3) the total CLASS SETTLEMENT PAYMENT due to each member of the

FINAL SETTLEMENT CLASS, and provide that information to CLASS COUNSEL and

DEFENDANTS' counsel by any secure file transfer method approved by CLASS COUNSEL

and DEFENDANTS' counsel.

      D.    <u>Consenting to Participation as a Party Plaintiff</u>: All FINAL SETTLEMENT

CLASS members who endorse and negotiate their CLASS SETTLEMENT PAYMENT check,

shall thereby consent in writing to participate in this Action as a party plaintiff, consistent with

the collective-action mechanism set forth in 29 U.S.C. § 216(b), and incorporated into the

Virginia Wage Payment Act and Virginia Overtime Wage Act (*see* Va. Code 40.1-29(J) & Va.

Code 40.1-29.2, respectively).

      E.    <u>Binding Effect on members of FINAL SETTLEMENT CLASS</u>: All members

of the FINAL SETTLEMENT CLASS will be bound by the terms and conditions of this

SETTLEMENT AGREEMENT, the FINAL APPROVAL ORDER, the FINAL JUDGMENT,

and the releases set forth herein; and will be deemed to have waived all objections and

opposition to the fairness, reasonableness, and adequacy of the settlement.

## XVI.  DUTIES OF CLAIMS ADMINISTRATOR

      A.    The PARTIES agree that Analytics Consulting LLC shall serve as the CLAIMS

ADMINISTRATOR.

      B.    The SETTLEMENT EXPENSES are to be paid by DEFENDANTS.

      C.    By agreeing to serve as the CLAIMS ADMINISTRATOR, the CLAIMS

ADMINISTRATOR shall voluntarily agree to subject itself to the jurisdiction of the COURT

and waives any jurisdictional objections.

D.      The CLAIMS ADMINISTRATOR will perform all of the administrative duties assigned herein, including: (1) submitting a flat fee, all-inclusive budget to counsel for the PARTIES for their approval before performing any claims services; (2) calculating the REVISED GROSS SETTLEMENT AMOUNT; (3) formatting and printing the Court-approved SETTLEMENT NOTICE and sending the SETTLEMENT NOTICE to members of the SETTLEMENT CLASS by U.S. first-class Mail as required in the SETTLEMENT AGREEMENT; (4) copying counsel for all PARTIES on material correspondence and promptly notifying all counsel for the PARTIES of any material requests or communications made by any PARTY; (5) requesting additional information from members of the SETTLEMENT CLASS in accordance with the terms of Section IX above; (6) maintaining the original mailing envelope in which requests to opt out or objections, and other correspondence is received; (7) promptly furnishing to CLASS COUNSEL and DEFENDANTS' counsel information related to requests to opt out and/or objections which the CLAIMS ADMINISTRATOR receives; (8) mailing a CLASS SETTLEMENT PAYMENT in accordance with the terms of Section IX above, as well as a copy of the FINAL APPROVAL ORDER, to members of the FINAL SETTLEMENT CLASS; (9) electronically transferring CLASS COUNSEL'S FEES, COSTS AND EXPENSES in accordance with the SETTLEMENT AGREEMENT; (10) attempting to confirm the accuracy and, if necessary, updating the addresses of the members of the SETTLEMENT CLASS through the United States Post Office's NCOA and ascertaining current address and addressee information for each SETTLEMENT NOTICE returned as undeliverable and conducting a second mailing to the current address, if ascertained; (11) maintaining a P.O. box or other mail address for

35

members of the SETTLEMENT CLASS to send requests to opt out, objections, and inquiries, as well as a toll-free phone number, e-mail address, and website (using a URL approved by the PARTIES) to receive inquiries from members of the SETTLEMENT CLASS and to provide information about the settlement to the same; (12) responding to inquiries of members of the SETTLEMENT CLASS regarding the SETTLEMENT NOTICE, terms of settlement, and procedures for submitting objections and requests to opt out; (13) referring to counsel for the PARTIES all inquiries by members of the SETTLEMENT CLASS regarding matters not within the CLAIMS ADMINISTRATOR'S duties specified herein, except that any correspondence or communication from members of the SETTLEMENT CLASS that are directed to CLASS COUNSEL but are received by the CLAIMS ADMINISTRATOR, and that are protected by the Attorney-Client Privilege, shall be provided solely to CLASS COUNSEL; (14) promptly apprising counsel for the PARTIES of the activities of the CLAIMS ADMINISTRATOR; (15) maintaining adequate records of its activities, including the dates of the mailing of SETTLEMENT NOTICE(s) to members of the SETTLEMENT CLASS, the mailing of CLASS SETTLEMENT PAYMENTS to members of the FINAL SETTLEMENT CLASS, returned mail and other communications and attempted written or electronic communications with members of the SETTLEMENT CLASS; (16) confirming in a declaration its completion of the administration of the SETTLEMENT AGREEMENT; (17) timely responding to communications from the PARTIES or their counsel; (18) reverting funds associated with allocations of the MAXIMUM GROSS SETTLEMENT AMOUNT to non-negotiated checks to DEFENDANTS; (19) calculating and paying the EMPLOYERS' SHARE OF PAYROLL TAXES, including but not limited to all FICA and FUTA taxes on

CLASS SETTLEMENT PAYMENTS; (20) performing all tax reporting duties required by federal, state, or local law or this SETTLEMENT AGREEMENT; (21) ensuring that members of the FINAL SETTLEMENT CLASS and CLASS COUNSEL are provided with IRS FORM W-2s and IRS FORM 1099MISCs, as appropriate; (22) opening and administering a qualified settlement fund, to which DEFENDANTS shall electronically transfer the amounts set forth in this SETTLEMENT AGREEMENT, in such a manner as to qualify and maintain it as a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. Section 1.468B-l ("QSF") – the QSF shall be interest bearing, to the extent permitted by applicable law or regulations; (23) opening the QSF at least five (5) business days prior to the date on which the QSF is to be funded; (24) protecting the personal data of members of the SETTLEMENT CLASS, including Social Security numbers, from public disclosure; (25) maintaining reasonable administrative, physical, and technical controls that will protect the confidentiality, security, integrity, and availability of personal data of the members of the SETTLEMENT CLASS pursuant to the terms of Section XVI.E below; (26) delivering to DEFENDANTS' counsel by any secure file transfer method approved by CLASS COUNSEL and DEFENDANTS' counsel data of members of the SETTLEMENT CLASS, copies of all negotiated settlement checks showing both the FINAL SETTLEMENT CLASS members' signatures and the acknowledgement/consent language above or below the endorsement line (discussed in Section XII.B, *supra*), and providing CLASS COUNSEL all information to which they are entitled under the SETTLEMENT AGREEMENT; (27) maintaining all records, electronic or otherwise, relating to the administration of this SETTLEMENT AGREEMENT, for a period of six (6) years after the date of FINAL

JUDGMENT; (28) performing the remaining tasks identified in Section II.B and, to the extent applicable, in this Section, with respect to individuals who allege they should be included in the SETTLEMENT CLASS and whom the PARTIES agree are properly included; (29) such other tasks contained in the SETTLEMENT AGREEMENT; and (30) such other tasks as ordered by the Court or mutually agreed to by the PARTIES.

E.    CLASS COUNSEL and DEFENDANTS' counsel have the right to review and approve any documents to be mailed by the CLAIMS ADMINISTRATOR prior to their mailing, and the CLAIMS ADMINISTRATOR may not mail any documents without first receiving written approval to send the documents from CLASS COUNSEL and DEFENDANTS' counsel.

## XVII.  TERMINATION OF THE SETTLEMENT AGREEMENT

A.    <u>Grounds for Settlement Termination</u>:  This SETTLEMENT AGREEMENT may be terminated on the following grounds:

1.    CLASS COUNSEL or DEFENDANTS' counsel may terminate the SETTLEMENT AGREEMENT if the COURT declines to enter an APPROVAL ORDER, or judgment substantially in the form submitted by the PARTIES, or the SETTLEMENT AGREEMENT does not become final for any other reason, or a Court of Appeals reverses the entry of an APPROVAL ORDER or judgment.

2.    If six percent (6%) or more of the members of the SETTLEMENT CLASS, collectively, exercise their rights to opt out and be excluded from the FINAL SETTLEMENT CLASS and this SETTLEMENT AGREEMENT, DEFENDANTS shall have the right, notwithstanding any other provisions of this SETTLEMENT AGREEMENT, to

withdraw from this SETTLEMENT AGREEMENT, whereupon the SETTLEMENT AGREEMENT will be null and void for all purposes and may not be used or introduced in further LITIGATION or any other proceeding of any kind.

B.    Procedures for Termination:  To terminate this SETTLEMENT AGREEMENT on one of the grounds specified above, the terminating Counsel (*i.e.*, CLASS COUNSEL or counsel for DEFENDANTS) shall give written notice to the opposing counsel no later than:

1.    Fifteen (15) business days after the COURT acts; or

2.    Fifteen (15) business days after the reversal by the Court of Appeals of the FINAL APPROVAL ORDER; or

3.    Fifteen (15) business days after DEFENDANTS receive notice from the CLAIMS ADMINISTRATOR that six percent (6%) or more of the members of the SETTLEMENT CLASS, collectively, exercised their rights to opt out and be excluded from that class and this SETTLEMENT AGREEMENT.

C.    Effect of Termination:  In the event that this SETTLEMENT AGREEMENT is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the LITIGATION is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any COURT:

1.    The SETTLEMENT AGREEMENT shall be terminated and shall have no force or effect, and no PARTY shall be bound by any of its terms.

2.    In the event the SETTLEMENT AGREEMENT is terminated or not approved by the COURT, DEFENDANTS shall have no obligation to make any payments to any PARTY, PLAINTIFF, member of the SETTLEMENT CLASS, or CLASS COUNSEL,

except that DEFENDANTS shall be responsible for paying the CLAIMS ADMINISTRATOR for services rendered up to the date the CLAIMS ADMINISTRATOR is notified that the SETTLEMENT AGREEMENT has been terminated or that the SETTLEMENT AGREEMENT has not been approved by the COURT.  Any amounts paid by DEFENDANTS to any PARTY, PLAINTIFF, member of the SETTLEMENT CLASS, or CLASS COUNSEL, pursuant to this SETTLEMENT AGREEMENT prior to termination shall be repaid to DEFENDANTS within ninety (90) days of the termination of this SETTLEMENT AGREEMENT.

        3.    The PRELIMINARY APPROVAL ORDER, FINAL APPROVAL ORDER, and/or judgment, including any preliminary or conditional order of class certification, shall be vacated;

        4.    The SETTLEMENT AGREEMENT and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the PARTIES, all of whom shall be restored to their respective positions in the LITIGATION prior to the settlement; and

        5.    Neither this SETTLEMENT AGREEMENT, nor any ancillary documents, actions, statements or filings in furtherance of settlement (including all matters associated with the settlement conferences) shall be admissible or offered into evidence in the LITIGATION or any other action for any purpose whatsoever.

        6.    DEFENDANTS reserve the right to oppose class certification, and move to decertify the FLSA collective action, should the SETTLEMENT AGREEMENT not become final.

## XVIII. LIMITATION ON PARTIES' USE OF THE SETTLEMENT TO SUPPORT CLAIMS, INCLUDING MOTIONS FOR CLASS OR CONDITIONAL CERTIFICATION, IN OTHER LITIGATION

None of the PLAINTIFFS or members of the FINAL SETTLEMENT CLASS, CLASS COUNSEL, DEFENDANTS or DEFENDANTS' counsel shall use: (1) the fact of this settlement of the RELEASED CLAIMS; (2) the terms of this SETTLEMENT AGREEMENT; or (3) any information, data or documents exchanged in connection with this settlement of the RELEASED CLAIMS, to support or oppose any claims against DEFENDANTS, including with respect to a Section 216(b) Motion For Conditional Certification under the FLSA or any Federal Rule of Civil Procedure 23 Motion For Class Certification, asserted in any other action. Specifically, PLAINTIFFS, members of the FINAL SETTLEMENT CLASS, and CLASS COUNSEL agree that they will not argue, in seeking conditional certification of an FLSA collective or the Federal Rule of Civil Procedure 23 certification of a putative state law class on other claims asserted in any other such action, that a putative collective is similarly situated or appropriate for class or collective treatment because DEFENDANTS agreed to settle the RELEASED CLAIMS and RELEASED OPT-IN CLAIMS on a class and/or collective basis. In addition, CLASS COUNSEL agrees to delete and/or destroy any information, data or documents exchanged in connection with this settlement upon request by DEFENDANTS' COUNSEL.

## XIX. PARTIES' AUTHORITY

A.     The signatories hereby represent that they are fully authorized to enter into this SETTLEMENT AGREEMENT and bind the PARTIES hereto to the terms and conditions hereof.

B.      PLAINTIFFS acknowledge that they will, together with CLASS COUNSEL,
seek COURT approval of this SETTLEMENT AGREEMENT such that it will bind themselves
and members of the FINAL SETTLEMENT CLASS to all terms set forth in this
SETTLEMENT AGREEMENT.

C.      It is agreed that because the members of the SETTLEMENT CLASS are so
numerous, it is impossible or impractical to have each member of the SETTLEMENT
CLASS execute the SETTLEMENT AGREEMENT. The SETTLEMENT NOTICE will
advise all members of the SETTLEMENT CLASS, and the FINAL APPROVAL ORDER
will advise all members of the FINAL SETTLEMENT CLASS, of the binding nature of the
releases, and that the releases will have the same force and effect upon members of the
FINAL SETTLEMENT CLASS as if the SETTLEMENT AGREEMENT were executed by
each member of the FINAL SETTLEMENT CLASS.

**XX.    MUTUAL FULL COOPERATION**

The PARTIES agree to fully cooperate with each other to accomplish the terms of the
SETTLEMENT AGREEMENT, including, but not limited to, execution of such documents
and to take such other action as may reasonably be necessary to implement the terms of the
SETTLEMENT AGREEMENT. The PARTIES to the SETTLEMENT AGREEMENT shall
use reasonable efforts, including all efforts contemplated by the SETTLEMENT
AGREEMENT and other reasonable efforts that may become necessary by order of the
COURT, or otherwise, to effectuate the SETTLEMENT AGREEMENT and the terms set forth
herein. PLAINTIFFS and CLASS COUNSEL shall, with the assistance and cooperation of

DEFENDANTS and DEFENDANTS' counsel, take reasonable steps to secure the COURT'S final approval of the SETTLEMENT AGREEMENT.

## XXI.  NOTICES

Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To PLAINTIFFS and members of the SETTLEMENT CLASS:

Christopher E. Collins
YUGO COLLINS, PLLC
25 Franklin Road, SW
Roanoke, VA  24011
chris@yugocollins.com

To DEFENDANTS:

Michael S. McIntosh
LITTLER MENDELSON, P.C.
1800 Tysons Boulevard, Suite 500
McLean, VA  21202
mmcintosh@littler.com

## XXII.  CONSTRUCTION AND INTERPRETATION

A.     The PARTIES hereto agree that the terms and conditions of the SETTLEMENT AGREEMENT are the result of lengthy, intensive, arms-length negotiations among the PARTIES, and the SETTLEMENT AGREEMENT shall not be construed in favor of or against any PARTY by reason of the extent to which any PARTY or his, her, or its counsel participated in the drafting of the SETTLEMENT AGREEMENT.

B.      Section titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this SETTLEMENT AGREEMENT or any of its provisions. Each term of this SETTLEMENT AGREEMENT is contractual and not merely a recital.

C.      This SETTLEMENT AGREEMENT shall be subject to and governed by the laws of the Commonwealth of Virginia and subject to the continuing jurisdiction of the United States District Court for the Western District of Virginia. The PARTIES agree that the COURT shall retain jurisdiction to enforce the terms of this SETTLEMENT AGREEMENT unless specifically set forth otherwise herein.

## XXIII. FORM AND CONTENT RESOLUTION

A.      The PARTIES agree they must reach agreement on the form and content of the SETTLEMENT AGREEMENT and its exhibits, the SETTLEMENT NOTICE, the PRELIMINARY APPROVAL ORDER, the FINAL APPROVAL ORDER, and the Motions for Approval.

B.      The PARTIES agree that in the event they disagree as to the meaning or interpretation of the terms of the SETTLEMENT AGREEMENT or its exhibits, any and all such disputes may be submitted to arbitration before a mutually selected arbitrator from the American Arbitration Association for final and binding resolution.  The PARTIES shall bear their own expenses for attorneys' fees, expenses and costs in connection therein.

## XXIV.  INTEGRATION CLAUSE

This SETTLEMENT AGREEMENT sets forth the entire agreement between the PARTIES hereto.

## XXV.   BINDING ON ASSIGNS

This SETTLEMENT AGREEMENT shall be binding upon and inure to the benefit of the PARTIES, the RELEASING PERSONS, the RELEASED PERSONS, and their respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

## XXVI. MODIFICATION

No rights hereunder may be waived or modified except in a writing signed by duly authorized representatives of the PARTIES.

## XXVII.        ENFORCEMENT OF THE SETTLEMENT AGREEMENT

A.    In the event a PARTY seeks to enforce the terms of this SETTLEMENT AGREEMENT or to collect on any payments due under the terms of this SETTLEMENT AGREEMENT, notice must be mailed to opposing counsel as provided in Section XXI. After receipt of notice, the PARTIES shall meet and confer in a good faith attempt to resolve the matter for ten (10) calendar days. In the event those efforts are unsuccessful, any PARTY who wishes to further pursue the matter agrees that any proceeding to enforce the terms of this SETTLEMENT AGREEMENT, or to declare rights and/or obligations under this SETTLEMENT AGREEMENT, or to collect on any payments due under the terms of this SETTLEMENT AGREEMENT, shall be brought in arbitration before a mutually selected arbitrator from the American Arbitration Association for final and binding resolution. The prevailing party in such an enforcement action may be awarded reasonable attorneys' fees, expenses, and costs.

## XXVIII.    COUNTERPARTS

The SETTLEMENT AGREEMENT, which shall be executed with wet signatures, may be executed in counterparts, and when each PARTY has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one SETTLEMENT AGREEMENT, which shall be binding upon and effective as to all PARTIES once executed by all PARTIES.

IN WITNESS WHEREOF, the undersigned have duly executed this SETTLEMENT AGREEMENT on _____, 2025:

**PLAINTIFFS**

**PLAINTIFF JESSICA DAVIS**

Date: 10/30/2025                By: _____

Jessica Davis

**PLAINTIFF LATRIVIA HARRIS**

Date: 10/28/2025                By: _Latrivia Harris_____

Latrivia Harris

**PLAINTIFF KRAEEMA JOHNSON**

Date: 10/30/25                By: _____

Kraeema Johnson

**PLAINTIFF SHEREE PAYNE**

Date: 10/28/2025

By: _____
ID 7azSenU6VYkhr6LwpgFQTxJz

Sheree Payne

**PLAINTIFF KETITIA STANLEY**

Date: 10/28/2025

By: _____
*Ketitia Stanley*
ID padYfEgXHyNAtyaroWpcFkE

Ketitia Stanley

**PLAINTIFF KRISTIAN STEVENS**

Date: 10/28/2025

By: _____
*Kristian Stevens*
ID NbRHSfAfQDgnGWU9UCPSQTGM

Kristian Stevens

**ON BEHALF OF THEMSELVES AND
ALL MEMBERS OF THE SETTLEMENT
CLASS**

**DEFENDANTS**

**DEFENDANT OLD SOUTHWEST
HEALTH AND REHABILITATION LLC**

Date: _____

By: _____
Name (Printed):
Title:

**DEFENDANT BAY POINTE
REHABILITATION AND NURSING LLC**

Date: _____

By: _____
Name (Printed):
Title:

**PLAINTIFF SHEREE PAYNE**

Date: _____    By: _____
                                Sheree Payne

**PLAINTIFF KETITIA STANLEY**

Date: _____    By: _____
                                Ketitia Stanley

**PLAINTIFF KRISTIAN STEVENS**

Date: _____    By: _____
                                Kristian Stevens

**ON BEHALF OF THEMSELVES AND
ALL MEMBERS OF THE SETTLEMENT
CLASS**

**DEFENDANTS**

**DEFENDANT OLD SOUTHWEST
HEALTH AND REHABILITATION LLC**

Date: 11/11/25    By: _____
                       Name (Printed):
                       Title: Administrator

**DEFENDANT BAY POINTE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

47

**PLAINTIFF SHEREE PAYNE**

Date: _____   By: _____

Sheree Payne

**PLAINTIFF KETITIA STANLEY**

Date: _____   By: _____

Ketitia Stanley

**PLAINTIFF KRISTIAN STEVENS**

Date: _____   By: _____

Kristian Stevens

**ON BEHALF OF THEMSELVES AND
ALL MEMBERS OF THE SETTLEMENT
CLASS**

**DEFENDANTS**

**DEFENDANT OLD SOUTHWEST
HEALTH AND REHABILITATION LLC**

Date: _____   By: _____

Name (Printed):
Title:

**DEFENDANT BAY POINTE
REHABILITATION AND NURSING LLC**

Date: 11/11/2025   By: _____

Name (Printed): Morgan Simpson
Title: LNHA

47

**DEFENDANT BIRCHWOOD PARK
REHABILITATION AND NURSING LLC**

Date: _11/11/25_     By: _Viggo Paul CE_

Name (Printed): _Viggo Paul Conradt-Eberlin_
Title: _Administrator_

**DEFENDANT BLUE RIDGE
REHABILITATION AND NURSING LLC**

Date: _____     By: _____

Name (Printed): _____
Title: _____

**DEFENDANT CYPRESS POINT
REHABILITATION AND NURSING LLC**

Date: _____     By: _____

Name (Printed): _____
Title: _____

**DEFENDANT DEER MEADOWS
REHABILITATION AND NURSING LLC**

Date: _____     By: _____

Name (Printed): _____
Title: _____

**DEFENDANT EASTERN HEALTHCARE
GROUP LLC**

Date: _____     By: _____

Name (Printed): _____
Title: _____

48

**DEFENDANT BIRCHWOOD PARK**
**REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

**DEFENDANT BLUE RIDGE**
**REHABILITATION AND NURSING LLC**

Date: 11|11|2025 _____    By: _____
                                Name (Printed): Misty Hinckley
                                Title: Administrator

**DEFENDANT CYPRESS POINT**
**REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

**DEFENDANT DEER MEADOWS**
**REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

**DEFENDANT EASTERN HEALTHCARE**
**GROUP LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

48

**DEFENDANT BIRCHWOOD PARK
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed):
Title:

**DEFENDANT BLUE RIDGE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed):
Title:

**DEFENDANT CYPRESS POINT
REHABILITATION AND NURSING LLC**

Date: 11/11/2025    By: Michelle Wombold, LNHA

Name (Printed):
Title:

**DEFENDANT DEER MEADOWS
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed):
Title:

**DEFENDANT EASTERN HEALTHCARE
GROUP LLC**

Date: _____    By: _____

Name (Printed):
Title:

48

**DEFENDANT BIRCHWOOD PARK
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT BLUE RIDGE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT CYPRESS POINT
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT DEER MEADOWS
REHABILITATION AND NURSING LLC**

Date: _11/10/25_____    By: _____

Name (Printed): _Steven  Jones_
Title: _Administrator_

**DEFENDANT EASTERN HEALTHCARE
GROUP LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

48

**DEFENDANT BIRCHWOOD PARK
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
Name (Printed): _____
Title: _____

**DEFENDANT BLUE RIDGE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
Name (Printed): _____
Title: _____

**DEFENDANT CYPRESS POINT
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
Name (Printed): _____
Title: _____

**DEFENDANT DEER MEADOWS
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
Name (Printed): _____
Title: _____

**DEFENDANT EASTERN HEALTHCARE
GROUP LLC**

Date: _11/12/2025_____    By: _____
Name (Printed): Akiva Shapiro
Title: COO

48

**DEFENDANT GREENE ACRES
REHABILITATION AND NURSING LLC**

Date: _Nov. 11, 2025_    By: _____

Name (Printed): _Amanda Coons_
Title: _Administrator_

**DEFENDANT NANS POINTE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT NASSAWADOX
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT NORTHERN CARDINAL
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT NORVIEW HEIGHTS
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

49

**DEFENDANT GREENE ACRES
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title:

**DEFENDANT NANS POINTE
REHABILITATION AND NURSING LLC**

Date: 11/12/1985 _____    By: Brian Stevenson - Executive Director

Name (Printed): _____
Title:

**DEFENDANT NASSAWADOX
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title:

**DEFENDANT NORTHERN CARDINAL
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title:

**DEFENDANT NORVIEW HEIGHTS
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title:

**DEFENDANT GREENE ACRES
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
Name (Printed): _____
Title: _____

**DEFENDANT NANS POINTE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
Name (Printed): _____
Title: _____

**DEFENDANT NASSAWADOX
REHABILITATION AND NURSING LLC**

Date: 11/13/2025    By: _____
Name (Printed): _____
Title: _____

**DEFENDANT NORTHERN CARDINAL
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
Name (Printed): _____
Title: _____

**DEFENDANT NORVIEW HEIGHTS
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
Name (Printed): _____
Title: _____

49

**DEFENDANT GREENE ACRES
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

**DEFENDANT NANS POINTE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

**DEFENDANT NASSAWADOX
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

**DEFENDANT NORTHERN CARDINAL
REHABILITATION AND NURSING LLC**

Date: 11-11-25 _____    By: _____
                                Name (Printed): Jamie Chard
                                Title: Administrator

**DEFENDANT NORVIEW HEIGHTS
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed):
                                Title:

49

**DEFENDANT GREENE ACRES
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT NANS POINTE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT NASSAWADOX
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT NORTHERN CARDINAL
REHABILITATION AND NURSING LLC**

Date: _____    By: _____

Name (Printed): _____
Title: _____

**DEFENDANT NORVIEW HEIGHTS
REHABILITATION AND NURSING LLC**

Date: _11/12/25_    By: _____

Name (Printed): _Bethani Ruhogo_
Title: _Executive Director_

49

**DEFENDANT OLD DOMINION
REHABILITATION AND NURSING LLC**

Date: 11/11/2025          By: _Erikka Halback, Administrator_
                              Name (Printed):
                              Title:

**DEFENDANT RIVER EDGE
REHABILITATION AND NURSING LLC**

Date: _____     By: _____
                              Name (Printed):
                              Title:

**DEFENDANT ROANOKE OPCO HOLDCO
LLC**

Date: _____     By: _____
                              Name (Printed):
                              Title:

**DEFENDANT ROANOKE REHAB &
HEALTHCARE CENTER, LLC**

Date: _____     By: _____
                              Name (Printed):
                              Title:

**DEFENDANT SEVEN HILLS
REHABILITATION AND NURSING LLC**

Date: _____     By: _____
                              Name (Printed):
                              Title:

**DEFENDANT OLD DOMINION
REHABILITATION AND NURSING LLC**

Date: _____     By:  _____

Name (Printed):
Title:

**DEFENDANT RIVER EDGE
REHABILITATION AND NURSING LLC**

Date: 11/13/25     By:  _____

Name (Printed): Matthew Brooks
Title: Administrator

**DEFENDANT ROANOKE OPCO HOLDCO
LLC**

Date: _____     By:  _____

Name (Printed):
Title:

**DEFENDANT ROANOKE REHAB &
HEALTHCARE CENTER, LLC**

Date: _____     By:  _____

Name (Printed):
Title:

**DEFENDANT SEVEN HILLS
REHABILITATION AND NURSING LLC**

Date: _____     By:  _____

Name (Printed):
Title:

50

**DEFENDANT OLD DOMINION
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed): _____
                                Title:

**DEFENDANT RIVER EDGE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed): _____
                                Title:

**DEFENDANT ROANOKE OPCO HOLDCO
LLC**

Date: _11/12/2025_____    By: _____
                                Name (Printed): Jay Gittleson
                                Title: Managing Partner

**DEFENDANT ROANOKE REHAB &
HEALTHCARE CENTER, LLC**

Date: _____    By: _____
                                Name (Printed): _____
                                Title:

**DEFENDANT SEVEN HILLS
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                Name (Printed): _____
                                Title:

50

**DEFENDANT OLD DOMINION
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                  Name (Printed): _____
                                  Title: _____

**DEFENDANT RIVER EDGE
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                  Name (Printed): _____
                                  Title: _____

**DEFENDANT ROANOKE OPCO HOLDCO
LLC**

Date: _____    By: _____
                                  Name (Printed): _____
                                  Title: _____

**DEFENDANT ROANOKE REHAB &
HEALTHCARE CENTER, LLC**

Date: 11/11/25 _____    By: _____
                                  Name (Printed): Andrew M. Sanders
                                  Title: Administrator

**DEFENDANT SEVEN HILLS
REHABILITATION AND NURSING LLC**

Date: _____    By: _____
                                  Name (Printed): _____
                                  Title: _____

**DEFENDANT OLD DOMINION
REHABILITATION AND NURSING LLC**

Date: _____   By: _____

Name (Printed):
Title:

**DEFENDANT RIVER EDGE
REHABILITATION AND NURSING LLC**

Date: _____   By: _____

Name (Printed):
Title:

**DEFENDANT ROANOKE OPCO HOLDCO
LLC**

Date: _____   By: _____

Name (Printed):
Title:

**DEFENDANT ROANOKE REHAB &
HEALTHCARE CENTER, LLC**

Date: _____   By: _____

Name (Printed):
Title:

**DEFENDANT SEVEN HILLS
REHABILITATION AND NURSING LLC**

Date: November 11, 2025   By: _____

Name (Printed): Rebecca S. Martin
Title: Administrator

50

**DEFENDANT THALIA GARDENS
REHABILITATION AND NURSING LLC**

Date: 11/11/25          By: _Allen Sinowitz_

Name (Printed):
Title: Administrator

**DEFENDANT VA SNF CONSULTING LLC**

Date: _____    By: _____

Name (Printed):
Title:

**DEFENDANT VA SNF MASTER
CONSULTING LLC**

Date: _____    By: _____

Name (Printed):
Title:

**DEFENDANT VA SNF OPERATIONS
HOLDINGS LLC**

Date: _____    By: _____

Name (Printed):
Title:

**DEFENDANT VA SNF OPERATIONS
HOLDINGS 2 LLC**

Date: _____    By: _____

Name (Printed):
Title:

51

**DEFENDANT VA SNF OPERATIONS
HOLDINGS 3 LLC**

Date: _____    By: _____
Name (Printed): 
Title: 

**DEFENDANT VA SNF OPERATIONS
HOLDINGS 4 LLC**

Date: _____    By: _____
Name (Printed): 
Title: 

**DEFENDANT WYTHE VA OPCO, LLC**

Date: _11-13-25_    By: _Eppie Saunders, administrator_
Name (Printed): 
Title: 

**DEFENDANT YDI EASTERN HOLDCO
LLC**

Date: _____    By: _____
Name (Printed): 
Title: 

52

**DEFENDANT THALIA GARDENS
REHABILITATION AND NURSING LLC**

Date: _____     By: _____

Name (Printed): _____
Title: _____

**DEFENDANT VA SNF CONSULTING LLC**

Date: 11/12/2025     By: _____

Name (Printed): Akiva Shapiro
Title: COO

**DEFENDANT VA SNF MASTER
CONSULTING LLC**

Date: 11/12/2025     By: _____

Name (Printed): Akiva Shapiro
Title: COO

**DEFENDANT VA SNF OPERATIONS
HOLDINGS LLC**

Date: 11/12/2025     By: _____

Name (Printed): Jay Gittleson
Title: Managing Partner

**DEFENDANT VA SNF OPERATIONS
HOLDINGS 2 LLC**

Date: 11/12/2025     By: _____

Name (Printed): Jay Gittleson
Title: Managing Partner

51

**DEFENDANT VA SNF OPERATIONS
HOLDINGS 3 LLC**

Date: 11/12/2025                    By: _____

Name (Printed):  Jay Gittleson
Title:  Managing Partner

**DEFENDANT VA SNF OPERATIONS
HOLDINGS 4 LLC**

Date: 11/12/2025                    By: _____

Name (Printed):  Jay Gittleson
Title: Managing Partner

**DEFENDANT WYTHE VA OPCO, LLC**

Date: _____            By: _____

Name (Printed):
Title:

**DEFENDANT YDL EASTERN HOLDCO
LLC**

Date: 11/12/2025                    By: _____

Name (Printed):  Jay Gittleson
Title: Managing Partner

52

**APPROVED AS TO FORM FOR RECOMMENDATION TO PLAINTIFFS AND FOR COURT APPROVAL:**

**ATTORNEYS FOR PLAINTIFFS/CLASS COUNSEL**

**YUGO COLLINS, PLLC**

Date: October 30, 2025          By: _____

Christopher E. Collins
Mia Yugo
Dylan Craig

**APPROVED AS TO FORM FOR RECOMMENDATION TO DEFENDANTS AND FOR COURT APPROVAL:**

**DEFENDANTS' COUNSEL**

**LITTLER MENDELSON, P.C.**

Date: November 14, 2025          By: _____

Michael S. McIntosh

53

# APPENDIX

## DEFINITIONS TO STIPULATION AND SETTLEMENT AGREEMENT

A.    "BAR DATE" is the date that is forty-five (45) calendar days after the date on which the CLAIMS ADMINISTRATOR mails the SETTLEMENT NOTICE to the members of the SETTLEMENT CLASS.

B.    "CAFA NOTICE" refers to the notice to be sent and paid for by DEFENDANTS to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(b).

C.    "CLAIMS ADMINISTRATOR" is Analytics Consulting LLC, the third-party claims administration firm mutually agreed upon by the PARTIES, retained by Defendants, and to be approved and appointed by the COURT, which will perform all of the administrative duties assigned by the PARTIES.

D.    "CLASS COUNSEL" refers to Christopher Collins, Mia Yugo, and Dylan Craig of Yugo Collins, PLLC.

E.    "CLASS COUNSEL'S FEES, COSTS AND EXPENSES" means the total amount of CLASS COUNSEL'S attorneys' fees, costs, and expenses approved by the COURT upon application by CLASS COUNSEL, in an amount not to exceed $21,523.83 (approximately 36.6% of the MAXIMUM GROSS SETTLEMENT AMOUNT).

F.    "CLASS SETTLEMENT PAYMENT" refers to any payment to which members of the FINAL SETTLEMENT CLASS may become entitled pursuant to this SETTLEMENT AGREEMENT, as set forth more fully in Section IX.B of the SETTLEMENT AGREEMENT.

G.     "COMPLAINT" refers to the Complaint filed on August 27, 2024 and all subsequent amendments thereto, including, but not limited to, the Amended Complaint filed on or about February 12, 2025.

H.     "COURT" means the COURT having jurisdiction of the LITIGATION, at any stage, presently the United States District Court for the Western District of Virginia.

I.     "DEFENDANTS" are Old Southwest Health and Rehabilitation LLC, Roanoke Rehab & Healthcare Center, LLC, River Edge Rehabilitation and Nursing LLC; Wythe VA OPCO, LLC; Greene Acres Rehabilitation and Nursing LLC; Deer Meadows Rehabilitation and Nursing LLC; Blue Ridge Rehabilitation and Nursing LLC; Bay Pointe Rehabilitation and Nursing LLC; Birchwood Park Rehabilitation and Nursing LLC; Cypress Point Rehabilitation and Nursing LLC; Nassawadox Rehabilitation and Nursing LLC; Norview Heights Rehabilitation and Nursing LLC; Northern Cardinal Rehabilitation and Nursing LLC; Nans Pointe  Rehabilitation and Nursing LLC; Old Dominion Rehabilitation and Nursing LLC; Seven Hills Rehabilitation and Nursing LLC; Thalia Gardens Rehabilitation and Nursing LLC; VA SNF Consulting LLC; Roanoke OPCO HOLDCO LLC; VA SNF Master Consulting LLC; VA SNF Operations Holdings LLC; VA SNF Operations Holdings 2 LLC; VA SNF Operations Holdings 3 LLC; VA SNF Operations Holdings 4, LLC; Eastern Healthcare Group LLC; and YDI Eastern Holdco LLC.

J.     "EMPLOYERS' SHARE OF PAYROLL TAXES" refers to all employer-paid payroll taxes including FUTA and the employers' share of FICA and state unemployment, as required by law with respect to CLASS SETTLEMENT PAYMENTS to members of the FINAL SETTLEMENT CLASS.

K.    "FINAL APPROVAL ORDER" refers to the order of the COURT: (i) granting FINAL JUDGMENT on the RELEASED CLAIMS; (ii) adjudging the terms of the SETTLEMENT AGREEMENT to be fair, reasonable and adequate, and directing consummation of its terms and provisions; (iii) approving CLASS COUNSEL'S application for an award of CLASS COUNSEL'S fees, costs, and expenses; (iv) finally certifying the SETTLEMENT CLASS for purposes of settlement only; (v) dismissing the LITIGATION with prejudice and permanently enjoining all members of the FINAL SETTLEMENT CLASS from prosecuting against DEFENDANTS and the RELEASED PERSONS any RELEASED CLAIMS and RELEASED OPT-IN CLAIM; and (vi) asserting and retaining jurisdiction over the claims alleged, the PARTIES in the LITIGATION, and the implementation and administration of this SETTLEMENT AGREEMENT.

L.    "FINAL APPROVAL HEARING" means the hearing contemplated by the PARTIES, at which the COURT will approve, in final, the SETTLEMENT AGREEMENT and make such other final rulings as are contemplated by this SETTLEMENT AGREEMENT.

M.    "FINAL EFFECTIVE DATE" refers to the first date after all of the following events and conditions have been met or have occurred: (1) the COURT enters a PRELIMINARY APPROVAL ORDER; (2) the BAR DATE passes; (3) the COURT enters a FINAL APPROVAL ORDER; (4) the deadline passes without action by counsel for the PARTIES to terminate the SETTLEMENT AGREEMENT; and (5) the time to appeal from the FINAL APPROVAL ORDER expires and no Notice of Appeal has been filed or, in the event that an appeal is filed, the appellate process is exhausted and the FINAL APPROVAL ORDER has remained intact in all material respects.

N.     "FINAL JUDGMENT" refers to the judgment entered by the COURT in conjunction with the FINAL APPROVAL ORDER dismissing the RELEASED CLAIMS from the LITIGATION on the merits and with prejudice and permanently enjoining all members of the FINAL SETTLEMENT CLASS from prosecuting against DEFENDANTS and the RELEASED PERSONS, any RELEASED CLAIMS.

O.     "FINAL SETTLEMENT CLASS" refers to any and all members of the SETTLEMENT CLASS who do not timely and validly exclude themselves from the class in compliance with the OPT-OUT and exclusion procedures set forth in this SETTLEMENT AGREEMENT.

P.     "GENERAL RELEASE" refers to the broader, general release of claims agreed to by PLAINITFFS Kraeema Johnson, Ketitia Stanley, Jessica Davis, Latrivia Harris, Sheree Payne, and Kristian Stevensset, as forth in Section XII.C

Q.     "INDIVIDUAL CLAIM PAYMENTS" refers collectively to the amounts related to individual claims asserted by PLAINTIFFS.

R.     "LITIGATION" means the legal action pending in the United States District Court for the Western District of Virginia captioned *Kraeema Johnson, et al. v. Old Southwest Health and Rehabilitation, LLC, et al.*, Case No. 7:24-cv-00574-MFU-CKM.

S.     "MAXIMUM GROSS SETTLEMENT AMOUNT" is $58,800. The MAXIMUM GROSS SETTLEMENT AMOUNT, plus the EMPLOYERS' SHARE OF PAYROLL TAXES and the $141,200 in INDIVIDUAL CLAIM PAYMENTS, represents the maximum amount that DEFENDANTS would pay pursuant to this SETTLEMENT AGREEMENT if every member of the SETTLEMENT CLASS participated in the settlement

57

and received a CLASS SETTLEMENT PAYMENT, inclusive of CLASS SETTLEMENT
PAYMENTS; CLASS COUNSEL'S FEES, COSTS AND EXPENSES; and INDIVIDUAL
CLAIM PAYMENTS; but excluding SETTLEMENT EXPENSES.

T.     "NURSING EMPLOYEES" refers to the individuals employed by Old
Southwest Health and Rehabilitation, LLC in the following positions: CNA, LPN, LPN
Supervisor, MDS LPN, MDS RN, RN, RN Supervisor, Unit Manager LPN, Wound Care LPN,
or Wound Nurse LPN.

U.     "OBJECTION PERIOD" refers to the period beginning with the date
SETTLEMENT NOTICE is mailed to members of the SETTLEMENT CLASS and ending
forty-five (45) calendar days thereafter during which members of the SETTLEMENT CLASS
may file an objection to the SETTLEMENT AGREEMENT.

V.     "OBJECTOR" is a member of the SETTLEMENT CLASS who has timely and
properly objected to the SETTLEMENT AGREEMENT during the OBJECTION PERIOD.

W.     "OPT-OUT" refers to any member of the SETTLEMENT CLASS who timely
and properly files a Request for Exclusion during the OPT-OUT PERIOD.

X.     "OPT-OUT PERIOD" refers to the period beginning with the date the
SETTLEMENT NOTICE is mailed to members of the SETTLEMENT CLASS and ending
forty-five (45) calendar days thereafter.

Y.     "PARTIES" refers to PLAINTIFFS and DEFENDANTS, and, in the singular,
refers to any of them, as the context makes apparent.

Z.     "PLAINTIFFS" refers to named plaintiffs Kraeema Johnson, Ketitia Stanley,
Jessica Davis, Latrivia Harris, Sheree Payne, and Kristian Stevens.

AA.    "PRELIMINARY APPROVAL ORDER" refers to the order of the COURT:
(1) asserting jurisdiction over the WAGE CLAIMS, the PARTIES in the LITIGATION, and
the implementation and administration of the SETTLEMENT AGREEMENT; (2) adjudging
the terms of the SETTLEMENT AGREEMENT, on a preliminary basis, to be fair, reasonable
and adequate, and in the best interests of PLAINTIFFS and members of the SETTLEMENT
CLASS, and directing consummation of its terms and provisions; (3) conditionally certifying
the SETTLEMENT CLASS pursuant to Fed. R. Civ. P. 23 for settlement purposes only; (4)
conditionally appointing Kraeema Johnson, Ketitia Stanley, Jessica Davis, Latrivia Harris,
Sheree Payne, and Kristian Stevens as PLAINTIFFS who, together with PLAINTIFFS'
counsel, shall be authorized to act on behalf of all members of the SETTLEMENT CLASS
with respect to the WAGE CLAIMS; (5) conditionally appointing PLAINTIFFS' counsel as
CLASS COUNSEL for the SETTLEMENT CLASS pursuant to Fed. R. Civ. P. 23; (6)
approving the content of the SETTLEMENT NOTICE, authorizing the first-class mailing of
the SETTLEMENT NOTICE to all members of the SETTLEMENT CLASS twenty (20)
calendar days after the entry of the PRELIMINARY APPROVAL ORDER, and finding that
the method of dissemination of the SETTLEMENT NOTICE is the best practicable means of
distributing the SETTLEMENT NOTICE to members of the SETTLEMENT CLASS; (7)
approving and appointing the neutral, third-party claim administration firm mutually selected
by the PARTIES to serve as the CLAIMS ADMINISTRATOR in accordance with the terms
of the SETTLEMENT AGREEMENT; (8) setting a forty-five (45) calendar day deadline for
the submission of Requests for Exclusion or objections by members of the SETTLEMENT
CLASS; (9) approving the Request for Exclusion process set forth in the SETTLEMENT

AGREEMENT; (10) ordering that any member of the SETTLEMENT CLASS who does not properly and timely opt out shall be bound by all the terms and provisions of the SETTLEMENT AGREEMENT, the FINAL APPROVAL ORDER, the FINAL JUDGMENT, and the releases set forth therein; (11) ordering that any member of the SETTLEMENT CLASS who validly and timely becomes an OPT-OUT shall not: (i) have any rights under the SETTLEMENT AGREEMENT; (ii) be entitled to receive a CLASS SETTLEMENT PAYMENT; (iii) have a right to object to the SETTLEMENT AGREEMENT; and (iv) be bound by the SETTLEMENT AGREEMENT, any FINAL APPROVAL ORDER, or the FINAL JUDGMENT; (12) approving the objection process set forth in the SETTLEMENT AGREEMENT; and (13) setting the FINAL APPROVAL HEARING for a date no earlier than one-hundred (100) calendar days after the motion for preliminary approval is filed.

BB.    "RELEASED CLAIMS" refers to the released claims set forth in Section XII.A.

CC.    "RELEASED OPT-IN CLAIMS" refers to the released claims set forth in Section XII.B

DD.    "RELEASED PERSONS" refers to DEFENDANTS, as well as to each of their past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, shareholders, insurers, reinsurers and assigns, and each of its/their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, plan fiduciaries and/or administrators, benefits plans sponsored or administered by DEFENDANTS, divisions, units, branches and any other persons or entities acting on their behalf, including any entity that was

60

a customer of DEFENDANTS, for which any member of the SETTLEMENT CLASS performed work or services during their employment with Old Southwest Health and Rehabilitation LLC.

EE.    "RELEASING PERSONS" refers to each and every member of the SETTLEMENT CLASS who does not timely and validly exclude themselves from the class in compliance with the opt-out and exclusion procedures set forth in this SETTLEMENT AGREEMENT, and his or her respective agents, attorneys, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, exclusive bargaining agents, successors-in-interest, and assigns.

FF.    "REVISED GROSS SETTLEMENT AMOUNT" means the MAXIMUM GROSS SETTLEMENT AMOUNT minus the amounts approved by the COURT for CLASS COUNSEL'S FEES, COSTS AND EXPENSES.

GG.    "SETTLEMENT AGREEMENT" refers to this Stipulation and Settlement Agreement as executed by the PARTIES.

HH.    "SETTLEMENT CLASS" refers to any and all NURSING EMPLOYEES employed by Old Southwest Health and Rehabilitation, LLC between December 1, 2023 and April 26, 2025 who received a sign-on and/or retention bonus and who do not exclude themselves from the class.

II.    "SETTLEMENT EXPENSES" means the reasonable fees, costs, and expenses incurred by the CLAIMS ADMINISTRATOR in performing the services authorized in this SETTLEMENT AGREEMENT.

JJ.    "SETTLEMENT NOTICE" refers to the notice agreed upon by the PARTIES

attached to this SETTLEMENT AGREEMENT as Exhibit A, which is to be directed to members of the SETTLEMENT CLASS and which shall provide notice of the PARTIES' settlement and the SETTLEMENT CLASS members rights with respect to the same, including the right to opt out and object, the RELEASED CLAIMS, and that by negotiating a CLASS SETTLEMENT PAYMENT FINAL SETTLEMENT CLASS members shall consent to participate in this action as party plaintiffs and released and waive the RELEASED OPT-IN CLAIMS.

KK.    "WAGE CLAIMS" refers to those claims asserted in the LITIGATION alleging that DEFENDANTS failed to pay employees bonuses, overtime, and/or other wages or remuneration in violation of the Fair Labor Standards Act; the Virginia Overtime Wage Act (Va. Code § 40.1-29.2) ("VOWA"); the Virginia Wage Payment Act (Va. Code § 40.1-29) ("VWPA"); and Virginia common law.

# eSignature Details

**Signer ID:**          **rQe5PQMc8tKXaL1HTMzhuDju**
Signed by:              Latrivia Harris
Sent to email:          latriviaharris@gmail.com
IP Address:             98.163.11.211
Signed at:              Oct 28 2025, 8:47 am EDT

**Signer ID:**          **4b8HSPAQDgnQWfJ9UCP5QTGM**
Signed by:              Kristian Stevens
Sent to email:          Krisstevens2195@gmail.com
IP Address:             206.171.52.7
Signed at:              Oct 28 2025, 8:52 am EDT

**Signer ID:**          **pai8YRgXHyfkAbyanvWpiPkE**
Signed by:              Ketitia Stanley
Sent to email:          kastanley2017@gmail.com
IP Address:             172.59.116.171
Signed at:              Oct 28 2025, 9:03 am EDT

**Signer ID:**          **7xzSenU6VYk5r4LwpgFQTvJa**
Signed by:              Sheree Payne
Sent to email:          shereepayne1@icloud.com
IP Address:             206.171.36.88
Signed at:              Oct 28 2025, 11:20 am EDT

**Signer ID:**          **QwSDSCanhhgZ6nWuJ1fVmTQr**
Signed by:              Jessica Davis
Sent to email:          babyjessimarz@gmail.com
IP Address:             70.188.28.137
Signed at:              Oct 30 2025, 1:58 pm EDT