**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

**KRAEEMA JOHNSON**, et al.,

        *Plaintiffs*,

    v.

**OLD SOUTHWEST HEALTH AND
REHABILITATION, LLC,** et al.,

        *Defendants*.

**Civil Action No. 7:24-cv-00574-MFU-CKM**

---

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

### I.
### INTRODUCTION

This is a proposed class/collective action settlement of an unpaid overtime action brought by Plaintiffs Kraeema Johnson, Ketitia Stanley, Sheree Payne, Jessica Davis, Latrivia Harris, and Kristian Stevens (collectively "Representative Plaintiffs") on behalf of themselves and all others similarly situated (the "Class"), against Old Southwest Health and Rehabilitation LLC ("Old Southwest"), Roanoke Rehab & Healthcare Center, LLC, River Edge Rehabilitation and Nursing LLC; Wythe VA OPCO, LLC; Greene Acres Rehabilitation and Nursing LLC; Deer Meadows Rehabilitation and Nursing LLC; Blue Ridge Rehabilitation and Nursing LLC; Bay Pointe Rehabilitation and Nursing LLC; Birchwood Park Rehabilitation and Nursing LLC; Cypress Point Rehabilitation and Nursing LLC; Nassawadox Rehabilitation and Nursing LLC; Norview Heights Rehabilitation and Nursing LLC; Northern Cardinal Rehabilitation and Nursing LLC; Nans Pointe Rehabilitation and Nursing LLC; Old Dominion Rehabilitation and Nursing LLC; Seven Hills Rehabilitation and Nursing LLC; Thalia Gardens Rehabilitation and Nursing LLC; VA SNF

Consulting LLC; Roanoke OPCO HOLDCO LLC; VA SNF Master Consulting LLC; VA SNF

Operations Holdings LLC; VA SNF Operations Holdings 2 LLC; VA SNF Operations Holdings

3 LLC; VA SNF Operations Holdings 4, LLC; Eastern Healthcare Group LLC; and YDI Eastern

Holdco LLC (collectively "Defendants").   In their Complaint (**ECF 1**) and First Amended

Complaint (**ECF 59**), Representative Plaintiffs claimed among other things, that the Class

consisted of individuals who, within the three (3) years prior to the filing of the Complaint, worked

as CNAs, LPNs, or RNs at Defendants' nursing facilities in Virginia.  Representative Plaintiffs

further alleged that the Class was not properly compensated under the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201, *et seq.*, and Virginia Wage Payment Act ("VWPA"), Va. Code § 40.1-

29, for all overtime premiums earned because Defendants allegedly did not include all non-

discretionary bonuses in their regular rates of pay or overtime premiums.  Representative Plaintiffs

sought to bring these claims on a collective (*see* 29 U.S.C. § 216(b)) and class (*see* Fed. R. Civ. P.

23) basis, respectively.  Defendants generally denied these allegations and contended that Plaintiffs

and the Class were properly compensated and contended that their claims were not susceptible to

adjudication on a collective or class basis outside of the context of a settlement.[1]

   As explained more fully below, the Parties have negotiated a settlement agreement (the

"Agreement") that will resolve the claims of the Representative Plaintiffs and the Class. By this

Unopposed Motion, Plaintiffs seek certification, for settlement purposes only, of a settlement class

---

[1] Indeed, Defendants dispute that VWPA claims may even be brought on a class basis pursuant to
Fed. R. Civ. P. 23, since the terms of the VWPA provides employee may bring an action "with
other aggrieved employees, or on behalf of similarly situated employees as a collective action
consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. §
216(b)." As such, Representative Plaintiffs acknowledge that in agreeing to settle claims on a Rule
23 class basis and not opposing Representative Plaintiffs' request that the Court certify a Rule 23
class for the limited purpose of the instant settlement Defendants do not concede the general
propriety of class treatment of VWPA claims pursuant to Fed. R. Civ. P. 23.

pursuant to Federal Rule of Civil Procedure 23.  Specifically, Plaintiffs seek preliminary approval

of a settlement class resolving the VWPA claims as a class action.

The Class the Plaintiffs ask this Court to preliminarily certify is:

> Any individuals employed in a CNA, LPN, LPN Supervisor, MDS LPN, MDS RN, RN, RN Supervisor, Unit Manager LPN, Wound Care LPN, or Wound Nurse LPN position by Old Southwest Health and Rehabilitation LLC between December 1, 2023 and April 26, 2025 who received a sign-on and/or retention bonus and who do not exclude themselves from the class.

The same individuals also will be provided an opportunity following final approval of the

settlement (if any) to join Plaintiffs' claims and proceed on a collective basis pursuant to Section

216(b) of the FLSA, by consenting in writing to participate in the settlement through the execution

of a settlement check.  Under the terms of the Settlement Agreement, each eligible individual will

have the opportunity to participate, or not participate, in the settlement as he or she so chooses.

Defendants will be funding this proposed class/collective settlement and have agreed to

pay the maximum total sum of $58,800[2] to the Class, inclusive of attorneys' fees and costs.

Consistent with the Settlement Agreement, Defendants will fund the entirety of the settlement and

will tender the Maximum Gross Settlement Amount, less any amounts associated with settlement

Class Members who request exclusion, to the Claims Administrator.[3] The Parties reached the

Agreement after several rounds of negotiations.

Representative Plaintiffs believe the Agreement is fair, reasonable, and adequate, and

represents a fair reasonable compromise of a bona fide dispute, that satisfies all criteria for

settlement approval under Fed. R. Civ. P. 23(e) and under the FLSA.

---

[2] In addition to the $58,800 to resolve collective/class FLSA/VWPA claims, the Representative Plaintiffs and Defendants have also resolved Representative Plaintiffs' individual, non-wage and hour claims.  The settlement of those non-class and non-FLSA claims does not require Court approval.

[3] The Parties have elected to use Analytics Consulting LLC as the Claims Administrator.

## II.
### ISSUES PRESENTED

By this Unopposed Motion, Plaintiffs asks the Court to: (1) preliminarily (for settlement purposes only) certify a proposed settlement class pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (2) appoint Yugo Collins, PLLC as Class Counsel for the Class for settlement purposes only; (3) appoint Kraeema Johnson, Ketitia Stanley, Sheree Payne, Jessica Davis, Latrivia Harris, and Kristian Stevens as Representative Plaintiffs for the Proposed Settlement Class; (4) preliminarily approve the terms, form, and processes explained in the Agreement; (5) preliminarily approve Plaintiffs' counsel's request for attorneys' fees and costs consistent with the Agreement; (6) set a date by which Plaintiffs must file a motion for final settlement approval and award of attorneys' fee, expenses, and/or costs; (7) schedule a Fairness Hearing for a date not fewer than 100 days after the filing of this motion; and (8) maintain jurisdiction over this matter for the purposes of enforcing the settlement during the pendency of the settlement administration process.

## III.
### SUMMARY OF FACTS AND PROCEDURAL HISTORY

Plaintiffs filed this case on August 27, 2024. The Complaint alleged that Defendants violated state and federal law by failing to pay the Class all overtime premiums earned. *See Complaint,* **ECF 1**. The crux of the allegations in the Complaint was that Defendants did not incorporate sign-on bonuses into the regular rates of pay of non-exempt employees who worked more than 40 hours in at least one week. Defendants timely filed a Motion to Partially Dismiss Plaintiffs' Claims and Strike Class Allegations. *See* **ECF 25.**

After Plaintiffs filed a Motion to File Amended Complaint with a copy of the Amended Complaint they asked to file, counsel for the Parties began to explore the possibility of resolution and what data would be needed to allow such talks to be productive. The parties were able to reach

the agreement that will provide each participating class member an amount that Plaintiffs' Counsel believes is 2.5 times the amount allegedly withheld, plus interest. By this Motion, Plaintiffs seek, and Defendants do not oppose, preliminary Court approval of the Agreement and specifically request that the Court enter an order granting such approval in the form of the proposed order the Parties agreed to as **Exhibit B** of their Settlement Agreement, which is submitted herewith.

**IV.**
**SUMMARY OF SETTLEMENT TERMS**

**A.    The Settlement Fund**

The Parties have agreed to settle Representative Plaintiffs' class and collective wage and hour claims for a Maximum Gross Settlement Amount of $58,800, inclusive of Class Counsel's attorneys' fees and costs and individual settlement payments to each putative member of the Class. The amount allocated to each Class Member was determined according to their alleged wage damages as calculated by Class Counsel. Alleged damages were calculated as 2.5 times the amount that Class Counsel believes was his/her realistic "best day" damages, plus interest. The average total pretax settlement to be received by each of the 82 Class Members is approximately $454.59. The actual amounts available to any particular Class Member will vary depending on the amount of overtime worked by each such Class Member and the amounts of any bonuses allegedly not included in their regular rates of pay.

**B.    Schedule**

Under the Agreement, 7 calendar days after the occurrence of all the following: (1) the Court has issued the preliminary approval order; (2) the Claims Administrator has finalized the potential class settlement payment amounts for each member of the settlement class; and (3) the Claims Administrator has received class members' contact information from Defendants, the Claims Administrator will disseminate the notice of the settlement to the Class. Class Members

will have 45 days from the notice date to "opt out" and reject the settlement. Class Members also will have 45 days from the notice date to file any objection to the settlement. Following final approval, Defendants will fund the Maximum Gross Settlement Amount, minus amounts associated with any Class Members who opt out, through the Claims Administrator. The Claims Administrator will then disseminate settlement payments and payment of attorneys' fees in a manner consistent with the Agreement.

**C.    Releases**

Each Class Member and Collective Opt-in Member will receive a Notice of Settlement (**Exhibit A** to the Settlement Agreement), which will set out his or her personal specific allocation. Each Class Member who does not request exclusion from the settlement will release Defendants and certain related persons from all non-FLSA wage and hour claims that have accrued through the date of Preliminary Approval. Such individuals also will consent to release all FLSA claims through Preliminary Approval by executing the check providing his or her settlement payment. If a Class Member chooses to reject the settlement by properly informing the Claims Administrator of his or her desire to be excluded, that individual will release no claims they may have against Defendants, and his/her allocation will not be paid into the QSF.

**E.    Settlement Claims Administration**

The Parties will retain a third-party company, Analytics LLC, to serve as the Claims or Settlement Administrator. Among other things, the Settlement Administrator shall be responsible for establishing the Qualified Settlement Fund, disseminating notice, receiving opt outs and objections (if any), and calculating and remitting withholdings and disbursing settlement allocations.

**G.    Proposed Notice Constitutes Best Notice Practicable**

Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e).  The proposed Notice (attached to the Settlement Agreement as **Exhibit A**) notifies Class Members of this class/collective action and the claims asserted.  The Notice is designed to inform the Class Members of the substantive terms of the proposed Agreement, their rights, the nature of the release, and how to participate or not participate in the settlement.  It also serves to inform them how to file any objection should they wish to do so.  Additionally, as part of the proposed Notice each recipient will be informed of her/his person specific allocation.

The Parties propose that the proposed Notice will be distributed via First Class U.S. Mail.  In order to ensure that the Notices of Settlement are received, the Claims Administrator will attempt to confirm the accuracy and, if necessary, update the addresses of the members of the Class using the United States Post Office's National Change of Address data prior to mailing.  If a Notice is nonetheless returned as undeliverable, the Claims Administrator will perform a "skip trace" to locate good addresses for Class Members.  The Notice will provide Class Members with contact information for both the Claims Administrator and Class Counsel and will fully apprise them of their rights and inform them of what they need to do to participate, to object, or to opt out of the settlement.

**E.    Attorneys' Fees and Litigation Costs**

Under the terms of the Agreement, subject to Court approval, the Parties agree that Class Counsel will receive $21,523.83 in attorneys' fees and costs in connection with the class/collective settlement, an amount equivalent to 36.6% of the Maximum Gross Settlement Fund.  This amount is in additional to the damages paid to class members for settling class claims.

## V.
### ARGUMENT & AUTHORITIES

**A.    Standard of Review**

"Federal Rule of Civil Procedure 23(e) requires court-approval of any proposed settlement

of a class action lawsuit, and further requires that class members receive notice of the settlement

before the court approves it." *Winingear v. City of Norfolk*, 2014 WL 12526327, at *1 (E.D. Va.

2014). The FLSA also requires court-approval of settlements. *Id.* (citing *Patel v. Barot*, 2014 WL

1624001, at *4 (E.D. Va. 2014)). "The factors governing court approval of settlements under Rule

23 and the FLSA are similar." *Id.* (citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL

3094955, at *11 (E.D. Va. 2009)).

There are typically three stages applicable to the review of a proposed class action

settlement. *See* Manual for Complex Litigation (4th) § 21.632–.634. First, the court conducts a

preliminary fairness evaluation and, if applicable, considers class certification. *See id.* at § 21.632

(noting that if the parties move for both class certification and preliminary approval, the

certification hearing and preliminary fairness evaluation can usually be combined). Second, if the

court makes a preliminary determination on the fairness, reasonableness, and adequacy of the

settlement terms, the parties are directed to prepare the notice of certification and proposed

settlement to the class members. *Id.* at § 21.633. Third, the court holds a final fairness hearing to

determine whether to approve the settlement. *Id.* at § 21.634.

**B.    Preliminary Class Settlement Approval Process**

Courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a

standard of flexibility in application which will in the particular case best serve the ends of justice

for the affected parties and … promote judicial efficiency." *Gunnells v. Health Plan Services, Inc.*,

348 F.3d 417, 424 (4th Cir. 2003) (cleaned up). When a settlement is reached prior to Rule 23

certification, the law permits a class to be certified solely for the purposes of settlement. Fed. R.

Civ. P. 23(e); *Gonzalez v. O.J. Smith Farms, Inc.*, 2020 WL 7388435, at *2 (E.D.N.C. 2020).

Although Rule 23(e) does not delineate a procedure for court approval of settlements of class

actions, courts have generally followed a multi-step process. *See* Fed. R. Civ. P. 23(e)(2).

Federal courts generally find that preliminary approval of settlement and notice to the

proposed class is appropriate if the proposed settlement "appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

preferential treatment to class representatives or segments of the class, and falls within the range

of possible approval." Newberg on Class Actions § 13:13 (5th ed. 2011).

At the preliminary approval stage, courts must both ensure that all of the requirements of

Rule 23(a) and one of the sections of 23(b) are satisfied and determine that the settlement falls

within the range of possible approval. *See* Fed. R. Civ. P. 23(a)–(b); *Winingear*, 2014 WL

12526327, at *1. Preliminary approval requires an exacting and thorough examination of the

settlement at issue, not merely a "judicial rubber-stamp" of the parties' agreement. *Id.* The Court

must be provided with the necessary information "to evaluate the fairness or adequacy of a

proposed settlement." *Id.* (citing *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383–84 (D. Minn. 2013)).

There is a strong judicial policy in favor of settlement. *Gonzalez*, 2020 WL 7388435, at *2.

**C.    Rule 23's Requirements Are Satisfied by the Proposed Class Settlement**

Plaintiffs seek class certification under Rule 23(b)(3). The certification requirements of

Rule 23 generally apply even when certification is for settlement purposes. *See Amchem Prods.*

*Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* Fed. R. Civ. P. 23(b)(3). To be certified, the

proposed class must first satisfy the four threshold requirements of Rule 23(a), which provide that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately protect the interests of the class.

*See* Fed. R. Civ. P. 23(a).

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3). Rule 23(b)(3) requires the district court to make a finding that (1) questions of law or fact common to class members predominate over questions affecting only individual members, and (2) that a class action is superior to the other methods for fairly and efficiently adjudicating the controversy. *See id.* at 23(b)(3). However, the trial court does not examine the merits of the underlying claims when it decides a motion for class certification. *Gonzalez*, 2020 WL 7388435, at *4 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974)).

While Defendants do not oppose class certification for purposes of this Settlement, they reserve their right to challenge certification in the event the Settlement is not preliminarily or finally approved.[4]

1.  The Proposed Class Satisfies Rule 23(a)(1)'s Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *See id.* at 23(a). There is no set number of members necessary for class certification and the decision to certify or not certify a class must be based upon the particular

---

[4] Regardless of whether this Court approves the proposed Settlement, Defendants' non opposition to this motion for approval shall not act to preclude Defendants from opposing both the merits and the propriety of collective or class certification in any subsequent action.

facts of each case. *Id.* (citing *Haywood v. Barnes*, 109 F.R.D. 568, 576–77 (E.D.N.C. 1986)

(recognizing courts have "certified classes composed of as few as eighteen … and twenty-five

members"). Here, the numerosity requirement is certainly met. There are 82 members of the Class.

Such numbers show that individual joinder would be impracticable. *See id.*

    2.   The Proposed Class Satisfies Rule 23(a)(2)'s Commonality Requirement

Under the "commonality" requirements of Rule 23(a)(2) of the Federal Rules of Civil

Procedure, at least one common question of law or fact must exist among class members. *See*

*Haywood*, 109 F.R.D. at 577–78. Commonality under Rule 23(a)(2) is satisfied when the legal

question linking the class members is substantially related to the resolution of the litigation.

*Walmart Stores, Inc. v. Dukes*, 564 U.S. 348, 350 (2011).

> Their claims must depend on a common contention …. That common contention,
> moreover, must be of such a nature that it is capable of class-wide resolution—
> which means that determination of its truth or falsity will resolve an issue that is
> central to the validity of each one of the claims in one stroke.

*Id.* "It is not necessary, however, that all of the questions of law or fact in a case be common

to all putative class members, but only that 'a single common question … exist.'" *Gonzales*, 2020

WL 7388435, at * 5. Typically, commonality is satisfied when all claims are based on the same

legal theory—that workers were not paid all promised wages when due, factual difference among

the putative class members will not defeat certification. *Id.* (discussing *Gaxiola v. Williams*

*Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117 (E.D.N.C. 2011)).

Here, Plaintiffs aver that the commonality requirement is satisfied because Class Members

were all paid non-discretionary bonuses, worked more than 40 hours in at least one week, had the

same group of job titles and job descriptions, performed the same types of work, and were

compensated the same way. Plaintiffs thus believe the Class was all subjected to the same alleged

practice(s) of underpayment of wages. As such, the success or failure of each Class Member's

claim turns on the same common questions—that is, whether wages were denied in violation of

the FLSA and VWPA.

   3.   <u>The Proposed Class Satisfies Rule 23(a)(3)'s Typicality Requirement</u>

Rule 23(a)(3) provides that class certification is appropriate where the claims of the

representative plaintiffs are typical of the claims of the class. The typicality requirement "goes to

the heart of a representative parties' ability to represent a class, particularly as it tends to merge

with the commonality and adequacy-of-representation requirements." *Deiter v. Microsoft Corp.*,

436 F.3d 461, 466 (4th Cir. 2006). "That is not to say that typicality requires that the plaintiffs'

claim and the claims of class members be perfectly identical or perfectly aligned." *Id.* at 467.

"[T]he test for typicality is not demanding." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th

Cir. 2001). Instead, the typicality inquiry focuses on the "similarity between the [representative]

plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."

*See id.* (citations omitted).

> Typicality does not require a complete identity of claims. Rather, the critical inquiry
> is whether the class representative's claims have the same essential characteristics
> of those of the putative class. If the claims arise from a similar course of conduct
> and share the same legal theory, factual differences will not defeat typicality.

*Id.* (quoting 5 *James W.M. Moore, et al.*, Moore's Federal Practice ¶ 23.24[4] (3d ed.

2000)). The representative plaintiffs must "simply 'be part of the class and possess the same

interest and suffer the same injury as the class members.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d

138, 147 (4th Cir. 2001). "Factual variances in the amount of damages claimed, or differences in

the availability of certain defenses against the representative plaintiffs, does not prohibit a finding

of typicality as long as the claims are based on the same legal or remedial theory." *Jeffreys v.*

*Communs. Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003).

Here, Plaintiffs submit there are no factual distinctions between the Representative Plaintiffs' claims and those of the Class. The Class all worked for Defendants as clinicians and all were paid as non-exempt employees according to Defendants' policies and practices. The Class shares the same legal interest in recovering its allegedly unpaid wages based on the same legal theory—that they were not paid the proper amount of overtime premiums due to certain bonuses not being included in their regular rates of pay.

4. <u>The Proposed Class Satisfies Rule 23(a)(4)'s Requirement for Adequacy of Representation</u>

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'" *Id.* at 625–26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). To meet the adequacy requirement, "the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. A conflict between the Representative Plaintiffs and the Class Members "must be more than merely speculative or hypothetical[]" to defeat the adequacy requirement—instead, the "conflict must be fundamental." *Gunnells*, 348 F.3d at 430.

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are met: (1) there is no conflict between the interests of the Representative Plaintiffs and the Class Members; and (2) Class Counsel is experienced in litigating complex class and multi-party actions like the one at issue. First, Representative Plaintiffs contend the following, (1) Representative Plaintiffs are typical of the Class, so they will fairly and adequately represent the interests of the class; (2) there is no

potential conflict between them and the other members of the proposed class because they are challenging practices that applied uniformly to all Class Members; and (3) Representative Plaintiffs' interests do not differ from those of the Class as a whole, in that they seek to benefit the proposed Class by obtaining damages for all Class Members. Second, Class Counsel are experienced in this type of litigation and have the resources to fully litigate this matter through trial on the merits, should such further litigation be required.

Plaintiffs' counsel are well-respected lawyers with a breadth of experience in the fields of employment litigation and wage and hour law. Plaintiffs' counsel has litigated a number of wage and hour cases, including, but not limited to:

Stanley Whiteman v. Luke Parry Enterprises, LLC, et al., 4:25-cv-00007 (W.D. Va. 2024);

Elizabeth Turkette v. Wedding Crushers, LLC, 7:24-cv-00408 (W.D. Va. 2024);

Tiffany Parson et al v. Anam Care LLC, et al., 7:24-cv-00613 (W.D. Va. 2024);

Jamie Keyser v. Giddy Holdings Inc. et al., 7:24-cv-00175 (W.D. Va. 2024);

Regina Fretwell v. Pallu Hospitality, LLC et al., 4:24-cv-00006 (W.D. Va. 2024);

Stacy Coogan v. Innovative Refrigeration Systems, Inc., 5:24-cv-00043 (W.D. Va. 2024);

Austin Jenkins v. Eldor Automotive Powertrain, LLC, 7:23-cv-00297 (W.D. Va. 2023);

Ryouga Kasper v. Yamada Japanese Restaurants, LLC, 6:23-cv-00050 (W.D. Va. 2023);

Amanda Baker v. Carriage Hill Retirement, LLC, 6:23-cv-00021 (W.D. Va. 2023); and

Stevie Priller v. Purpose Driven Events, LLC, 6:22-cv-00046 (W.D. Va. 2022);

In addition to the cases cited above, Plaintiff's counsel has also successfully represented clients in numerous wage and hour cases filed in state court, as well as negotiated successful settlements prior to filing suit.

5. <u>The Proposed Class Satisfies Rule 23(b)'s Requirement for Predominance and Superiority</u>

Class certification under Rule 23(b)(3) requires that common issues of law or fact predominate over individual issues and that the class action be the superior method of dealing with the dispute. *See* Fed. R. Civ. P. 23(b).

i. *Predominance Under Rule 23(b)(3)*

Rule 23(b)(3)'s predominance prerequisite requires courts to ask "whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454 (2016) Put differently, the predominance inquiry is about whether class-wide questions are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501 F.3d 592, 619 (6th Cir. 2007). In this case, Plaintiffs aver that in the context of this settlement the proposed classes satisfy the Rule 23(b)(3) predominance requirement because all Collective/Class Members share a common set of core, predominate facts and legal issues, including but not limited to:

1) All Class Members are alleged to have worked for Defendant as employees;

2) All Class Members are alleged to have been non-exempt employees;

3) All Class Members are alleged to have worked more than 40 hours in at least one week; and

4) All Class Members are alleged to have earned bonuses that were allegedly improperly excluded from their regular rates of pay.

The superiority element of Rule 23(b)(3) requires that the purported class action be superior to other available methods for the fair and efficient adjudication of the controversy. *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010). This is a fact-specific inquiry which requires a court to find the objective of the class-action can be achieved in a particular case. *Id.* Rule 23(b)(3) identifies four factors relevant to the superiority inquiry:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D). Courts also look at practical reasons that a class action may be superior such as the preservation of judicial economy. *Manuel v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 109780, at *48 (E.D. Va. 2015).

Numerous courts have held class actions are superior in wage cases because of the threat of retaliation. *See, e.g.*, *Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 24 (D. Mass. 2010) ("Courts have considered risk of reprisal by an employer as weighing in favor of certification"); *Perez v. Safety-Kleen Systems, Inc.*, 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior in employment context because, inter alia, "some class members may fear reprisal"). Indeed, one court has explained that fear of employer retaliation against individuals is "a very important concern" because "the nature of the economic dependency involved in the employment relationship is inherently inhibiting." *O'Brien v. Encotech Const. Servs., Inc.*, 203 F.R.D. 346, 350 (N.D. Ill. 2001); *see also Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486, 500 (D. Md. 2010) ("reluctance to sue one's employer may inhibit some potential claimants," therefore a "class action is well-suited to protect their rights").

Here, Representative Plaintiffs contend that a class action is superior to other methods of adjudication. First, the objectives of this lawsuit—recovering unpaid overtime damages for all Class members within the maximum statute of limitations period—can be fairly and efficiently achieved through the class resolution of this case. Second, the pertinent factors listed in Rule 23(b)(3)(A)–(D) point toward a class action being the superior method of adjudicating this case.

Under the 23(b)(3)(A) factors, no one before this Court have expressed a desire to prosecute their claims individually and 82 similarly situated individuals stand to benefit from the resolution of this matter. There is no reason to presume that any of the absent putative class members—none of whom have independently pursued these claims—would desire to control the litigation of a separate case. It is more likely that the absent Class Members will consent to class resolution since the 82 Class Members are slated to receive an average amount in excess of $400.

The superiority factor in Rule 23(b)(3)(B) is likewise resolved in favor of class resolution because there are no other similar pending suits of which Class Counsel is aware. The Rule 23(b)(3)(C) factor also demonstrates the superiority of this class action in this forum because the relevant project on which the work in question was performed is located within this District and Division. This Court therefore has a substantial interest in the resolution of the issues raised in this litigation occurring in one forum. Accordingly, this particular forum is the most desirable and convenient forum, and superior to any other forum for this action to proceed.

Finally, and practically, a class action is superior here because the alternative method of adjudication requires holding numerous separate trials. Class resolution achieves economies of time, effort, and expense, and promote uniformity of decision.

**D.    The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation**

In determining a motion for preliminary approval of a class action settlement agreement, the Court reviews the proposed settlement to make a preliminary fairness evaluation. *See Shaver v. Gills Eldersburg, Inc.*, 2016 U.S. Dist. LEXIS 54578, at *5 (D. Md. 2016). Preliminary approval should be granted if the proposed settlement is within the range of possible approval. *Id.* Class Counsel submits that this settlement is well within the upper range of possible approval. As mentioned above, Plaintiffs believe this settlement will provide Class Members (with alleged

federal and state overtime damages) with significant settlement amounts calculated as 2.5 times the wages Plaintiffs claim were withheld, plus interest, based on data stored by the Defendants.

At this step, the court is only to determine whether there is "probable cause" that the proposed settlement is fair and reasonable. *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1380 (D. Md. 1983). A settlement is fair where it is the product of good-faith, arm's length bargaining without collusion. *In re Jiffy Lube*, 927 F.2d 155, 159 (4th Cir. 1991). In determining fairness, courts look at "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Id.*

1. The Proposed Settlement is Fair

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been contested from the beginning. This case only settled after the parties engaged in extensive settlement discussions with the assistance of pay data furnished by Defendants and each side checking the calculations of the other to ensure the final totals are accurate.

i. *Posture of the Case*

This case resolved after over a year of litigation and only after Defendants and Plaintiffs engaged in multi-stage negotiations. Had the litigation continued, additional resources would have been expended, but the Class's damages likely would not. Though the process was prolonged, it eventually resulted in the settlement now being presented to the Court. Defendants and Plaintiffs then worked collaboratively to draft the comprehensive Agreement now presented for this Court's review and approval.

ii.    *Extent of Discovery*

Defendants provided necessary data for the construction of Plaintiffs' damages model. Such data related to hours worked, bonuses earned, and wages paid. In addition to the informal discovery exchanged between the Parties, Class Counsel also conferred with the Named Plaintiffs in this matter. These conversations further corroborated the information received from Defendants and allowed Class Counsel to meaningfully negotiate on behalf of the Class Members.

Informal discovery in this case has been sufficient such that Defendants and Plaintiffs know the important facts affecting the case and have adequately assessed the respective benefits of settlement and potential risks of continued litigation. In addition, Class Counsel committed substantial resources to investigating and analyzing the claims of the putative class. The proposed settlement calculations are based significantly on the pay and time data exchanged in informal discovery on behalf of the Class Members, supporting the fairness of the overall proposed settlement.

iii.    *Circumstances Surrounding the Negotiations*

The negotiations that resulted in this settlement were conducted at arms' length over several months. The Parties have cooperatively worked together to fully finalize the Agreement before this Court. The Parties exchanged multiple drafts of the Agreement and held multiple further conferences to address settlement issues as they arose during the drafting process.

iv.    *Experience of Counsel*

Class Counsel are experienced litigators who have represented many employees in wage and hour litigation. Likewise, Defendants' Counsel are very experienced in wage and hour litigation and represent employers across Virginia and other numerous other states.

v.    *Degree of Opposition to the Settlement*

As Notice has not yet issued to the Class Members, Plaintiffs are unable to fully respond to this factor. However, Representative Plaintiffs approved and executed the Agreement promptly and were pleased with the results. This factor will be fully addressed in the motion for final approval, should this Court preliminarily approve the Agreement and authorize the issuance of Notice.

An examination of the four fairness factors clearly demonstrates this proposed settlement is not the result of collusion, but is the product of good-faith, arm's length bargaining. Therefore, this proposed settlement should be approved as fair.

2.    The Proposed Settlement is Adequate

Likewise, the adequacy factors equally favor approval of the proposed settlement. While the adequacy factors are more relevant to this Court's decision in the final approval motion, they do provide guidance at the preliminary approval stage that the settlement is appropriate for certification. *See In re Jiffy Lube*, 927 F.2d at 159.

i.    *Strength of Plaintiffs' Case on the Merits*

Plaintiffs have asserted that they were denied proper overtime wages. Defendants have denied all of Plaintiffs' allegations and assert that Class Members are not owed any regular or overtime compensation. Ultimately, liability would likely turn on whether bonuses were paid, whether they were non-discretionary, and whether they were appropriately included in Plaintiffs' regular rates of pay when calculating their overtime premiums. Plaintiffs believe that liability would have been found but acknowledge that Defendants strongly assert otherwise. The Agreement provides for substantial compensation for Plaintiffs and Class Members' claims and negates the risk of a bad result.

ii.    *Difficulties of Proof and Defenses*

In order to prevail on their claims, the Class would be required to prove that they earned non-discretionary bonuses that were not included in their regular rates of pay. If liability were to be established, there would have been a significant disagreement as to the proper measure of damages owed and what, if any, credit Defendants would have been entitled to due to reimbursements paid. Additionally, Plaintiffs would have had to establish the propriety of proceeding on a class and/or collective basis on these claims. All of these uncertainties weigh in favor of the adequacy and certainty of the proposed settlement.

iii.    *Duration and Expense of Additional Litigation*

This settlement is properly juxtaposed against what would likely be a long, drawn out, and expensive litigation should this matter proceed. The length of time necessary to reach a final result would have occupied many more years of judicial resources and vast amounts of attorney time. Litigating this case to conclusion would potentially cost each side hundreds of thousands of dollars in additional attorneys' fees while likely not resulting in significantly better recoveries for the Class. Moreover, this settlement eliminates the possibility of costly appeals which would likely result from any verdict or dispositive ruling.

Therefore, this factor also supports the adequacy of the proposed settlement.

iv.    *Solvency of Defendant and Likelihood of Recovery*

The fourth adequacy factor, Defendants' financial solvency, does not bear significantly either way in considering the adequacy of the settlement. However, while Defendants are currently solvent and in good financial health, Plaintiffs have no idea if that will remain true years into the future—which is a reasonable timeline by which this litigation can be resolved, absent settlement.

Defendants have agreed to pay up to now to resolve the pending litigation and is capable of funding the settlement payments according to the deadlines set forth herein. This proposed settlement provides compensation and a level of certainty for the Class—now, not several years into the future.

v.    *Degree of Opposition to the Settlement*

As notice of the settlement has not yet issued to the Collective/Class Members, review of this factor is premature. However, the Representative Plaintiffs have approved of and willingly executed the Agreement before the Court. Defendants and Plaintiffs will have further insight regarding the degree of opposition to the settlement, if any, before the filing of the Final Approval Motion.

Accordingly, all five of the adequacy factors favor approving this proposed settlement. Therefore, this proposed settlement should be approved as adequate.

**D.    The Proposed Settlement Also Represents a Fair and Reasonable Resolution of a Bona Fide Dispute Under the FLSA**

Representative Plaintiffs also request the Court approve the proposed settlement of Class Members FLSA claims.  They have brought FLSA claims as a collective action.  Unlike the procedure under Rule 23, collective members must affirmatively opt into the litigation in order to join it. *See Romero v. Mountaire Farms Inc.*, 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011); *Beltran-Benitez v. Sea Safari, Ltd.*, 180 F. Supp. 2d 772, 774 (E.D.N.C. 2001).  Because "parties may elect to opt in, but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *Velasquez Monterrosa v. Mi Casita Restaurants*, No., 5:14-cv-448-BO, 2017 WL 11829699, at *7 (E.D.N.C. Mar. 8, 2016) (quoting *McKenna v. Champion Intern. Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165

(1989)). Accordingly, the high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See De la Cruz v. Chopra*, No. CV DKC 18-0337, 2018 WL 2298717, at *1-2 (D. Md. May 21, 2018) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1355) (stating FLSA settlement agreements should generally be accepted if fair and reasonable). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1353. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id.* at 1354; *Michael Johnson v. PHP of NC, Inc.*, No. 5:23-CV-462-M, 2025 WL 2717423, at *3 (E.D.N.C. Sept. 24, 2025). As discussed above, the instant settlement was arrived at in the context of disputed litigation and, because the Settlement Agreement resolves a *bona fide* dispute and was reached after vigorous arm's-length settlement negotiations, it should be approved. Indeed, Plaintiffs' assert the Parties' settlement satisfies the even higher standard applicable to Rule 23 settlements, as discussed in § V.C, *supra*, which should be conclusive in finding § 216(b) standards are satisfied.

## CONCLUSION

Wherefore the Representative Plaintiffs, without opposition from Defendants, request that this Court grant preliminary approval for the Agreement and enter the Proposed Order attached to the Settlement Agreement as **Exhibit B**.

Respectfully submitted,

By: */s/ Christopher E. Collins*
Christopher E. Collins (VSB No. 90632)
Mia Yugo (VSB No. 92975)

YUGO COLLINS, PLLC
25 Franklin Road, SW
Roanoke, Virginia 24011
Tel: (540) 861-1529
Direct: (540) 855-4791
chris@yugocollins.com
mia@yugocollins.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November, 2025, I electronically filed the foregoing

pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to all counsel of record.

/s/ *Christopher E. Collins*
Christopher E. Collins